Michael Ray ORNDORFF, Appellant,

v.

A.L. LOCKHART, Director, Arkansas
Dept. of Correction, Appellee.

James William HOLMES, Appellant,

v.

A.L. LOCKHART, Director, Arkansas
Dept. of Correction, Appellee.

Hoyt Franklin CLINES, Appellant,

v.

A.L. LOCKHART, Director, Arkansas
Dept. of Correction, Appellee.

Darryl V. RICHLEY, Appellant,

v.

A.L. LOCKHART, Director, Arkansas
Dept. of Correction, Appellee.

Michael Ray ORNDORFF, Appellee,

v.

A.L. LOCKHART, Director, Arkansas
Dept. of Correction, Appellant.

James William HOLMES, Appellee,

v.

A.L. LOCKHART, Director, Arkansas
Dept. of Correction, Appellant.

Hoyt Franklin CLINES, Appellee,

v.

A.L. LOCKHART, Director, Arkansas
Dept. of Correction, Appellant.

Darryl V. RICHLEY, Appellee,

v.

A.L. LOCKHART, Director, Arkansas
Dept. of Correction, Appellant.

Nos. 88–2344, 88–2405.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1989.
Decided June 19, 1990.

Gerald A. Coleman, West Memphis, Ark., for appellants.

Jack Gillean, Little Rock, Ark., for appellees.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Michael Ray Orndorff, James William Holmes, Hoyt Franklin Clines, and Darryl V. Richley (petitioners) appeal, and A. L. Lockhart cross-appeals, from the judgment of the District Court[1] granting petitioners partial habeas corpus relief. We affirm in part, vacate in part, and remand for further proceedings.

In October 1981 petitioners were found guilty of the murder of Don Lehman in Rogers, Arkansas and were sentenced to death. The convictions were affirmed on direct appeal, *Clines v. State*, 280 Ark. 77, 656 S.W.2d 684 (1983), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984), and post-conviction relief was denied, *Clines v. State*, 282 Ark. 541, 669 S.W.2d 883 (1984). Petitioners filed petitions for habeas corpus relief in the District Court pursuant to 28 U.S.C. § 2254 (1988) in June 1984, and the cases were consolidated for joint disposition. After conducting an evidentiary hearing, the District Court issued a thorough memorandum and order from which the parties now appeal.

Although petitioners raised a number of grounds for habeas relief in the District Court, the principal issue below, and the ground upon which the District Court granted relief, concerned the state trial court's admission into evidence of the testimony of Vickie Lehman, the victim's daughter and a key prosecution witness. Unbeknownst to petitioners or to their trial counsel, Vickie and her mother Virginia Lehman had been placed under hypnosis by one Gene Peters roughly one month after the murder at the behest of the prosecutor. As the District Court found:

> During the sessions Peters would try to get his subjects to revisualize and relive the events of January 8 [1981] and, following each session, he and the Lehmans would report to the prosecutor's office. Peters took notes of each session but no electronic recording devices were used. His notes were never turned over to the prosecutor and have since been destroyed. Neither Peters [n]or the prosecutor have any record of the questions asked and the responses given.

*Orndorff v. Lockhart*, 707 F.Supp. 1062, 1066 (E.D.Ark.1988). Petitioners' attorneys did not learn that Vickie Lehman had been hypnotized prior to trial until after they had filed the direct appeal in the Arkansas Supreme Court. *Id.*

The District Court ruled that the prosecutor's failure to apprise opposing counsel that Vickie Lehman had undergone hypnosis violated the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, and that the use of her testimony at trial was not harmless error. In fashioning its remedy, however, the District Court permitted the state, as an alternative to retrying petitioners, to commute their death sentences to life imprisonment without the possibility of parole. Petitioners appeal from this ruling, claiming that the District Court erred

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkan-  sas.

in permitting the state the option of commutation. Lockhart concedes that the use of Vickie Lehman's testimony without disclosure of her hypnosis was constitutional error, but cross-appeals from the District Court's finding that the error was not harmless.

■ Given the scope of the cross-appeal, we assume without deciding that the District Court was correct in holding that the use of Vickie Lehman's post-hypnotic testimony violated the Confrontation Clause. In the District Court, petitioners sought to establish that the use of this testimony was not harmless error by demonstrating that Vickie Lehman's trial testimony differed significantly from statements she had given the police shortly after the crime occurred; the state sought to show that any variations were not material and that the error was therefore harmless. At issue were some 137 instances of such variations. Our difficulty with the District Court's treatment of the hypnosis issue stems from the fact that, although it purported to make a harmless-error inquiry, the District Court did not analyze these variations but rather held that the prosecutor's failure to disclose that Vickie Lehman had been hypnotized was "inherently prejudicial." *Orndorff,* 707 F.Supp. at 1069. The District Court reasoned that Vickie Lehman's testimony at trial was "inherently prejudicial" because post-hypnotic testimony may, generally speaking, appear more credible than ordinary testimony since the witness, through hypnosis, may gain a heightened conviction that what he or she believes to be the truth actually represents reality. *See id.* We believe this resolution of the harmless error inquiry to be unsound.

■ Assuming that the prosecutor's nondisclosure of Vickie Lehman's hypnosis ran afoul of the Confrontation Clause, that error is not harmful simply because the jury might have found her testimony less credible had defense counsel been able to probe the issue of her hypnosis on cross-examina-

tion. The fact that defense counsel was denied use of a legitimate means of cross-examining an adverse witness is not in and of itself grounds for disturbing a guilty verdict. *See Delaware v. Van Arsdall,* 475 U.S. 673, 680–81, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986). The District Court's view of the matter, we believe, amounts to the contrary view, since it premises a finding of harmful error on little more than the (presumptively) enhanced credibility of Vickie Lehman's testimony and defense counsel's inability to counteract it. As the Supreme Court stated in *Van Arsdall:*

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors ... includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. 475 U.S. at 684, 106 S.Ct. at 1438 (citations omitted).

We believe that the inquiry into the issue of harmless error in this case must begin with a comparison of Vicki Lehman's pre-hypnosis statements with her trial testimony in light of *Van Arsdall.* The District Court should make this comparison with an eye toward sorting those things about which Vicki Lehman could testify without aid of hypnosis (that is, from actual memory) from those things about which she could testify only after being hypnotized. Unless this sorting process reveals significant variations, the error should be deemed harmless.[2]

■ We therefore vacate the judgment of the District Court in part and remand

---

2. For example, in *Byrd v. Armontrout,* 880 F.2d 1 (8th Cir.1989), we stated that any error with regard to the admission of post-hypnosis testimony fell short of constitutional magnitude where the record showed that the hypnosis did

not affect the witness's testimony on any major point. 880 F.2d at 10, n. 10. We made this observation despite defendant's contention that the witness's belief in her post-hypnosis testimony had been enhanced by the hypnosis. *See*

 

the matter to the District Court for further proceedings.[3] The District Court already has determined that, beyond a reasonable doubt, the error here (if indeed there was harmful error) affected only the penalty phase of the trial, not the jury verdict finding petitioners guilty as charged.

The court's review of the entire record does reveal, beyond a reasonable doubt, that the petitioners were responsible for the robbery homicide for which they were tried. Their activities in preparation for the armed break-in and the events which later lead to their apprehension were fully documented through the testimony of thirty four prosecution witnesses. However, even though there is no question of their guilt for the crimes charged, the court is unable to say with confidence that the jury would have recommended the death penalty for each and every petitioner had defense counsel been informed of Vicki Lehman's hypnosis. Critical portions of her testimony may have been disregarded by the jury had they known of the effects of hypnosis, or the trial court may have deemed some testimony inadmissible altogether. *Cf. Little v. Armontrout,* [835 F.2d 1240 (8th Cir.1987)], *supra* (trial court's refusal to appoint an expert in hypnosis for an indigent defendant violated due process and rendered the trial fundamentally [un]fair).

*Orndorff v. Lockhart,* 707 F.Supp. at 1070. Having reviewed the record, we are thoroughly satisfied, as was the District Court, that the harmful error here (if any) goes only to the imposition of the death penalty and not to the jury verdict finding petitioners guilty of capital felony murder. The evidence of petitioners' guilt, even without Vicki Lehman's testimony, is overwhelming.

▇▇▇ Lockhart argues that, because the District Court found error affecting only the penalty phase of the trial, the court erred in ordering that the writ of habeas corpus issue unless the state either retries petitioners or commutes their death sentences to life without parole. We agree. In a habeas case, no less than any other, the remedy must be commensurate with the harm. Accordingly, if in light of this opinion the District Court finds on remand that the use of Vicki Lehman's testimony was not harmless error insofar as its effect upon the jury's recommendation that petitioners receive the death penalty is concerned, the court's order granting habeas relief should give the state the option of either conducting a new sentencing proceeding or reducing the sentences to life without parole. *See Pickens v. Lockhart,* 714 F.2d 1455, 1469 (8th Cir.1983).[4]

We have considered petitioners' additional claims of error and find them to be without merit.

For the foregoing reasons, the judgment of the District Court is affirmed in part, vacated in part, and the matter remanded for further proceedings consistent with this opinion.

*Byrd,* 686 F.Supp. 743, 771 (E.D.Mo.1988). Similarly, in *Williams v. Armontrout,* 877 F.2d 1376 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1140, 107 L.Ed.2d 1044 (1990), we concluded that even though hypnosis had rendered a witness's in-court identification of the defendant unreliable, habeas relief was not warranted because this identification "did not contribute to the conviction." *Id.* at 1380–81.

3. Having adjudicated the issue of the use of Vickie Lehman's testimony within the context of the Confrontation Clause, we need not consider whether the use of her testimony offends due process, as resolution of the due process claim would not affect in any way our disposition of this appeal.

4. In its cross-appeal the state also argues that the District Court erred in granting habeas relief to defendants Orndorff and Clines because they had requested the District Court not to consider any claim that would result only in the commutation of their death sentences to life imprisonment without parole, and to defendant Richley, who had moved the District Court to dismiss his habeas petition. However, in the joint reply brief filed by all four petitioners, they argue that the District Court did not err in granting habeas relief to all of them. We take this to constitute an abandonment by Orndorff, Clines, and Richley of the positions they took in this regard in the District Court, which abandonment renders the issue moot and thus not properly before us in this appeal.