**Leatrice LITTLE, Appellant,**

v.

**Bill ARMONTROUT, Appellee.**

**No. 86–1278.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1987.

Decided Dec. 23, 1987.

Before LAY, Chief Judge, HEANEY, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, and MAGILL, Circuit Judges, En Banc.

ARNOLD, Circuit Judge.

Leatrice Little appeals the summary dismissal of his petition for a writ of habeas corpus, 28 U.S.C. § 2254, by the District Court. Because we hold that Little's Fourteenth Amendment right to due process of law was violated when the state trial court refused to appoint an expert in hypnosis for him, we reverse.[1]

## I.

On the evening of August 13, 1980, the victim, M.B.G., was raped in her apartment in Cape Girardeau, Missouri. The assailant entered her apartment, hid in her closet, and then attacked her when she opened the closet doors. He wore one of her blouses over his head during the assault. Though she did not mention it to the policewoman who came to her aid, M.B.G. told her sister that the blouse slipped for between two and 60 seconds, allowing her to see the man's face. M.B.G. said she saw a partial right profile of the defendant: his cheekbone, jaw, lips, nose, and eye.

Two days after the attack, M.B.G. was hypnotized by Officer B.J. Lincecum of the Cape Girardeau Police Department in the hope of enhancing her memory of the assailant. Officer Lincecum's only training in hypnosis was a four-day course he attended at the Law Enforcement Hypnosis Institute, Inc. M.B.G. was Officer Lincecum's twenty-seventh subject.

Officer Lincecum used the "TV screen" or third-person method of hypnosis, in which the subject is told to view the events as though they were taking place on a TV screen. The subject is supposed to be able to control the unfolding story as though it were on videotape; she can stop the action and zoom in for close ups. In a session lasting several hours, attended by M.B.G.,

Toby H. Hollander, Lewiston, Me., for appellant.

Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

1. The opinion of a panel of this Court previously filed, 819 F.2d 1425 (8th Cir.1987), was auto- matically vacated when the petition for rehearing en banc was granted.

her sister, and the hypnotist, M.B.G. was unable to add to her previous description. At the end of the session, Officer Lincecum told M.B.G. that her memory of the event would improve. An audio tape was made of the session, but was destroyed 15 days later, pursuant to department regulations.[2]

M.B.G. was shown photographs of suspects on four occasions. On the first three, October 16, November 5, and November 10, Little's photo was not included. M.B.G. picked one picture out of the first group of photos, saying that it resembled the man who raped her. On December 23, 1980, M.B.G. was shown a photo array containing Little's picture. She picked Little as the man who raped her. Between December 25 and 31, when she was at the police station, M.B.G. was shown two other pictures of Little. Again, she identified him as her assailant. On January 26, 1981, M.B.G. viewed a lineup of six men. She quickly eliminated four, then picked Little after viewing the right profiles of the remaining two men.

The only substantial issue at trial was identification. M.B.G. testified that Little was her assailant. The maintenance man working the night M.B.G. was attacked said he saw a man resembling Little in the area. However, under cross-examination, he stated he was unsure of his identification. The maintenance man was hypnotized to improve his memory. A policeman patrolling nearby testified he saw Little jogging that night. When the policeman stopped the patrol car to speak to him, the man ran away. Defendant Little and several alibi witnesses testified that Little was 78 miles away in Poplar Bluff when the crime took place. The jury found Little guilty of rape, Mo.Rev.Stat. § 566.030.1, and burglary, Mo.Rev.Stat. § 569.160. He was sentenced to 25 years in jail.

The Missouri Supreme Court affirmed, holding that no improper suggestion occurred during the identification. *State v. Little,* 674 S.W.2d 541, 543–44 (Mo.1984) (en banc), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985).[3] The Court noted that Officer Lincecum was not involved in the investigation of the case, and that M.B.G. did not identify the accused until months after the session took place. The hypnotic session yielded no further information. The Court rejected Little's protests about the hypnotist's lack of qualifications, noting that there was no evidence that the officer's ineptitude, if any, had led to improper suggestion. The Court concluded that the witnesses did not act in a way indicative of improper suggestions.

Little argued that the reason he could not prove to the Court's satisfaction there had been improper suggestions was that the public defender's office, which represented him, did not have sufficient funds to hire an expert in hypnosis. The Court responded: "[t]here is a state university in Cape Girardeau with a faculty of Psychology and library facilities, and we are confident that a resourceful lawyer would not be helpless in obtaining expert information sufficient for a preliminary inquiry, at little or no expense." 674 S.W.2d at 544.

## II.

On appeal to us from the District Court's denial of the writ, Little argues (1) that because of the pretrial hypnosis, M.B.G.'s identification testimony lacked the reliability necessary for admission into evidence consistent with due process; (2) that the use of hypnosis violated the defendant's Sixth Amendment right to confrontation; (3) that the deliberate destruction of the tape recordings of the hypnotic session deprived the defendant of his right to due

---

2. This regulation has since been changed.

3. In 1985, the Missouri Supreme Court made hypnotically enhanced testimony inadmissible per se. *Alsbach v. Bader,* 700 S.W.2d 823 (Mo. 1985) (en banc). The Court stated that the use of hypnosis to aid recall does not meet the requirements of Missouri's version of the *Frye* test. *Id.* at 829 (citing *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923)) (scientific evidence ad-

missible only if it has gained general acceptance in its field). The Court went on to observe that much of the authority cited in the earlier Missouri case allowing hypnotic testimony, *State v. Greer,* 609 S.W.2d 423 (Mo.App.1980), *vacated on other grounds,* 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981), had been overruled. 700 S.W.2d at 825.

process; and (4) that the trial court's refusal to appoint an expert for defendant violated his right to due process.[4]

▮ The panel which originally heard this case, in a scholarly and comprehensive opinion, held, in substance, that M.B.G.'s identification testimony was so unreliable as to violate due process. Posthypnotic identification testimony is admissible, according to the panel opinion, only if (1) the hypnosis is properly conducted with scientifically recognized safeguards, and (2) the identification testimony is corroborated by other evidence. We find it unnecessary to go that far in order to hold that Little is entitled to a new trial. In our view, the denial of a state-provided expert on hypnosis to assist this indigent defendant rendered the trial fundamentally unfair and requires that the conviction be set aside. We deem it unnecessary to address the broader and more far-ranging issues about hypnotically enhanced testimony addressed by the panel opinion.[5] If the State chooses to try Little again (we understand he is now on parole), these issues may not recur, especially since, under *Alsbach v. Bader, supra,* hypnotically enhanced testimony is not now admissible in Missouri courts, as a matter of the state law of evidence. (We assume the rule of *Alsbach* would be applied by the state courts at any retrial of Little's case.)

▮ When the state brings criminal charges against an indigent defendant, it must take steps to insure that the accused has a meaningful chance to present his defense. See *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). While the state need not provide the indigent with all the tools the wealthy may buy, it must provide the defendant with the "basic tools of an adequate defense." *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). In *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed. 2d 53 (1985), the Supreme Court extended the definition of "basic tools" to include the appointment of a psychiatric expert for a defendant in a capital case when the defendant's sanity would be a significant issue at trial. Failure to appoint an expert in such a case would be a denial of due process. Justice Marshall, writing for the Court, noted that the defendant's interest in preventing an inaccurate determination of guilt would outweigh the state's interest in avoiding the additional cost in a case where the assistance of an expert could reduce the risk of an erroneous outcome. *Id.* 105 S.Ct. at 1094–95.

In *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the Court declined to rule explicitly on whether the state had an obligation to appoint a nonpsychiatric expert for an indigent defendant. However, the Court based its decision on the fact that the defendant only baldly asserted his need for aid, making no showing as to the reasonableness of his request. *Id.* at 323 n. 1, 105 S.Ct. at 2637 n. 1. We must first decide whether the rule of *Ake* should be applied at all in the present context, where the expert in question is not a psychiatrist, and the death penalty is not a possibility. We think the answer is yes. There is no principled way to distinguish between psychiatric and nonpsychiatric experts. The question in each case must be not what field of science or expert knowledge is involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given. Nor do we draw a decisive line for due-process purposes between capital and noncapital cases. To be sure, the defendant's interest in staying alive is

---

**4.** For the reasons given in the panel opinion, 819 F.2d at 1428, we reject the State's argument that Little has failed to exhaust his state remedies.

**5.** After the panel opinion was filed, the Supreme Court held in *Rock v. Arkansas,* — U.S. —, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), that state courts may not exclude, on a per se basis, all hypnotically enhanced testimony offered by a criminal defendant. The Court expressly disclaimed any intention of ruling on the admissibility of hypnotically enhanced testimony in other contexts, such as an offer of such testimony by the State from the victim of the crime— the issue presented here. *Id.* 107 S.Ct. at 2712 n. 15.

greater and different in kind from his interest in avoiding a prison term, but the latter interest, in our opinion, still outweighs the state's interest in avoiding the relatively small expenditure that would be required.

*Ake* and *Caldwell* taken together hold that a defendant must show more than a mere possibility of assistance from an expert. Rather, the defendant must show a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial. *Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987); see also *Vassar v. Solem,* 763 F.2d 975, 977 (8th Cir.1985); *but see Stafford v. Love,* 726 P.2d 894 (Okla.1986).[6] Leatrice Little demonstrated that an expert in hypnosis would have substantially aided his defense, and that denial of such expert would and did have a material impact on his trial.

While hypnosis has been accepted as a therapeutic tool since 1958, its role in criminal investigations and trials has remained controversial. See Council on Scientific Affairs, *Scientific Status of Refreshing Recollection by the Use of Hypnosis,* 253 J.A. M.A. 1918 (1985), cited in *Rock v. Arkansas,* —— U.S. ——, 107 S.Ct. 2704, 2713, 97 L.Ed.2d 37 (1987). Though studies have shown that hypnosis leads to an increase in a subject's recollections, both true and imagined memories may result. *Id.* Thus, some experts have concluded that while hypnosis is useful in investigation and establishing leads, it is less useful as a truth-determiner. See *People v. Hughes,* 59 N.Y. 2d 523, 466 N.Y.S.2d 255, 260, 453 N.E.2d 484, 489 (1983).

Three major characteristics of hypnosis can lead to inaccurate memories. The first is confabulation, the process by which the subject fills in gaps in her memory to make her recall more coherent. Sometimes the added information is accurate, other times it is purely imagined. The subject cannot distinguish between the true and imagined memories. The second problem is suggestibility. The subject wishes to please the hypnotist, so she answers questions the way the hypnotist wants, not necessarily correctly. Suggestion by the hypnotist can be wholly unintended; he or she may suggest a response through tone of voice, demeanor, or body language.[7] The third problem is memory-hardening. Hypnosis gives the subject great confidence in the memories reviewed. Because she now believes in the accuracy of her memory, regardless of its actual truth, the witness will be difficult to shake under cross-examination. See generally *Rock v. Arkansas,* 107 S.Ct. at 2713, citing M. Orne, *et al., Hypnotically Induced Testimony, in Eyewitness Testimony: Psychological Perspectives* 171 (G. Wells and E. Loftus, eds. 1985); Diamond, *Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness,* 68 Calif.L.Rev. 313, 333–342 (1980).

Given these perils of hypnotically enhanced testimony, it is clear that an expert would have aided Little in his defense. The expert could have pointed out questions asked by Officer Lincecum which were suggestive or could have caused confabulation. The expert could have presented the limitations of hypnosis, and explained theories of memory. This would probably have had far more impact on the judge at the suppression hearing and the jury at trial than Little's lawyer's attempts at impeaching the state's expert by reading from one of the psychology textbooks he found at a college library, or using information developed from interviewing a professor of psychology. As Justice (then Chief Judge) Cardozo once stated, a defendant is "at an unfair disadvantage if he is unable because of poverty to parry by his own [expert] witnesses the thrusts of

---

6. The Oklahoma Supreme Court in *Stafford* agreed that a defendant desiring appointment of an expert must show the appointment would be reasonable and necessary. However, the Court did not believe a nonpsychiatric expert, a hypnotist, was required under *Ake.* For reasons stated in text, we disagree.

7. One court thought suggestion may come about when a hypnotist tells his subject to do something as innocuous as remember everything clearly. This could cause the subject to turn an uncertain memory into a confident one. See *State v. Mack,* 292 N.W.2d 764, 769 (Minn.1980).

those against him." *Reilly v. Berry,* 250 N.Y. 456, 461, 166 N.E. 165, 167 (1929). The State called its own expert on hypnosis to testify at the suppression hearing. It should not have denied Little a similar weapon.

It is evident as well that denial of Little's request probably had a material impact on the trial. The only issue at trial was identification. The state's strongest witness was M.B.G., who had undergone hypnosis. The state used an expert to get the hypnotically enhanced testimony admitted. Officer Lincecum testified about hypnosis generally, and as it was applied to M.B.G. Little's only hope was to impeach Officer Lincecum with a library-gained knowledge of hypnosis.

We are mindful of the finding of the Supreme Court of Missouri that there was simply no evidence of improper suggestiveness during any of the hypnotic sessions conducted in this case. It would follow that an expert would have contributed nothing useful. His testimony would simply have been irrelevant. Our first impulse was to defer to this finding, but on reflection we conclude that we cannot. M.B.G. did not identify Little until after being hypnotized. She had glimpsed only the right profile of the criminal, and had done so only for a time period so short as to be described by the Missouri Supreme Court as "at least two seconds...." 674 S.W.2d at 542. The police hypnotist told her that hypnosis would improve her memory, and in fact her memory did later improve, or at least she thought it did. We think an expert witness could well have explained to the judge and jury how M.B.G. could have been influenced by improper suggestion, even without Lincecum's intending it or her realizing it. The conclusion that there was no improper suggestion or other taint could well itself have been different if Little had been given expert assistance.

III.

The judgment of the District Court must be reversed, and the cause remanded to that Court with directions to grant the writ, setting aside Little's conviction and freeing him unconditionally from state supervision, unless the State commences proceedings to retry him within such reasonable time as the District Court may fix. If the State chooses to try the case again, and if it seeks to introduce identification testimony from M.B.G., Little must be given a reasonable chance, out of the presence of the jury, to show that that testimony was influenced or enhanced by hypnosis. In attempting to make this showing, he must have the assistance of a state-provided expert, for reasons we have given. If he succeeds in making this showing, we assume that M.B.G.'s identification testimony will be excluded, under the new rule of the *Alsbach* case. If he fails to make such a showing, M.B.G. may give her identification testimony.[8]

Reversed and remanded with instructions.

---

**8.** We reject Little's argument that destruction of the tapes of the hypnotic sessions violated due process. It has not been shown that the tapes had an exculpatory value that was apparent before they were destroyed. See *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Little's further argument that hypnosis has so far obscured his ability to cross-examine M.B.G. as to violate the Confrontation Clause of the Sixth Amendment, as applied to the states by the Due Process Clause of the Fourteenth Amendment, should not recur at any new trial, because if hypnosis is shown to have been that important a factor, M.B.G.'s identification testimony will presumably be excluded as a matter of state law.