Timothy JOHNSON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 65137.

Missouri Court of Appeals,
Western District.

April 4, 2006.

Mark A. Grothoff, Assistant State Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shawn L. Naccarato, Assistant Attorney General, Jefferson City, MO, for respondent.

Before EDWIN H. SMITH, C.J., and NEWTON and HARDWICK, JJ.

EDWIN H. SMITH, Chief Judge.

Timothy Johnson appeals the motion court's order overruling, without an evidentiary hearing, his Rule 29.15[1] motion

1. All rule references are to the Missouri Rules of Criminal Procedure, 2005, unless other-

for post-conviction relief, alleging ineffective assistance of appellate counsel. After a jury trial in the Circuit Court of Cole County, the appellant was convicted of the class B felony of committing violence against an employee of the Missouri Department of Corrections, § 217.385.[2] Pursuant to § 558.016, the appellant was sentenced as a prior and persistent offender to twenty years in the Missouri Department of Corrections, to be served consecutively to his current sentences.

The appellant raises one point on appeal. He claims that the motion court clearly erred in overruling his Rule 29.15 motion, without an evidentiary hearing, because, in his motion, he alleged facts, not conclusions, which were not refuted by the record, and which, if true, would establish that he received ineffective assistance of counsel as a result of his appellate counsel's failure to claim on direct appeal that the trial court erred in overruling the appellant's pretrial motion *in limine* and admitting photographs of the victims showing their injuries.

We affirm.

## Facts

On May 2, 2000, the appellant was an inmate at the Jefferson City Correctional Center (JCCC). Just before 8:00 a.m., David Webster, a caseworker at JCCC, noticed that the appellant was wearing a hoop-style earring, which was a violation of prison rules. Webster requested that the appellant remove the earring and asked to see his identification card. After looking at his identification card, Webster informed the appellant that he would contact him later about this conduct violation.

At 10:15 a.m., Webster attempted to contact Carl Dedrick, the housing unit ser-geant on the appellant's floor, to interview the appellant regarding the conduct violation. However, Dedrick was unavailable so Webster asked Chris Swicord, a JCCC corrections classification assistant, to perform the interview. Swicord agreed to do the interview.

Webster escorted the appellant to the interview room where his interview was to be conducted. Present were Webster, Swicord, and the appellant. Also present was another inmate, Eric Clemmons, who was awaiting an interview on an unrelated conduct violation. Swicord conducted the interview of the appellant without incident.

At the conclusion of the interview, as the appellant stood up and turned to leave the room, Webster noticed a glint from his ear, which he assumed was another earring. Consequently, Webster called the appellant back and asked to see the earring. The appellant responded by stating, "You're not going to quit fucking with me, are you?" The appellant then punched Webster twice in the head. Webster fell on the floor and the appellant immediately began to kick him. Swicord attempted to stop the fight by grabbing the appellant around the upper torso. However, he was unable to subdue the appellant, and the appellant started to hit him. In the meantime, Webster tried to call for assistance, but he could not remember what number to call for help.

At some point, Webster turned around and saw the appellant hitting Swicord, causing him to fall to the floor. In order to divert the appellant's attention away from Swicord, Webster called out to the appellant, which resulted in the appellant once again attacking Webster. Having knocked Webster to the floor, the appel-

**2.** All statutory references are to RSMo 2000, unless otherwise indicated.

lant again turned his attention to Swicord. Once finished attacking Swicord for the second time, the appellant again attacked Webster, who was still on the floor. The appellant straddled him, grabbed him by the throat to choke him, and said, "Now I'm going to kill you, mother fucker." However, Webster was able to get the appellant off of him by reaching up and grabbing him by the neck. Once off of Webster, the appellant moved away from him and began to pace around the room.

While the appellant was choking Webster, Swicord was able to get up off the floor and got to the door to yell for help. When he opened the door, he saw James Welch, a JCCC recreation officer. Swicord told him that he and Webster had been assaulted and asked for help. Welch entered the room, surveyed the scene, and used his radio to call the control center for assistance. Welch then placed himself between the appellant, who was pacing back and forth, and Webster, who was still on the floor. Welch patted the appellant down for contraband, but found none. By that time, several other correctional officers arrived at the scene. The appellant was then handcuffed and escorted from the interview room. Immediately after the incident, Lieutenant Malone of the JCCC took photographs of the scene and the victims.

Webster was taken to the emergency room at Saint Mary's Hospital in Jefferson City, Missouri. At the hospital, he received treatment for a large bruise, a cut on the inside of his mouth, and injuries to his head and shoulder. Swicord was also taken to Saint Mary's to be treated for a triple bone fracture of the eye socket and a caved-in sinus wall on the left side of his face.

The appellant was indicted in the Circuit Court of Cole County for one count of the class B felony of committing violence against an employee of the Missouri Department of Corrections, in violation of § 217.385. The indictment reads:

On or about May 2, 2000, in the County of Cole, State of Missouri, the defendant was an inmate lawfully confined in the Jefferson City Correctional Center, David Webster and Chris Swicord was a duly appointed and acting Corrections Officer of the Jefferson City, Correctional Center, a Missouri Department of Corrections and Human Resources correctional institution, and the defendant committed violence to David Webster and Chris Swicord by striking them with his fist.

On March 5, 2001, the appellant filed a *pro se* motion *in limine* to, *inter alia,* exclude the photographs taken by Lieutenant Malone of the victims and their injuries. On March 7, 2001, the appellant's case proceeded to trial before a jury in the Circuit Court of Cole County. The appellant appeared *pro se.* As a preliminary matter, the trial court denied the appellant's motion *in limine.* At trial, the State called Welch as a witness. During Welch's testimony, the State offered the photographs of the victims. The court asked the appellant if he had any objection to the admission of the photographs, to which he replied, "No objection." The photographs were admitted. At the close of all the evidence, the jury found the appellant guilty as charged.

On April 18, 2001, pursuant to § 558.016, the appellant was sentenced as a prior and persistent offender to twenty years in the Missouri Department of Corrections, to be served consecutively with his current sentences. On April 27, 2001, the appellant filed a notice of appeal of his conviction. On appeal, the appellant's counsel claimed that the trial court erred in allowing the appellant to proceed *pro se,* in overruling the appellant's motion to dismiss, in not

allowing the appellant to subpoena his treating physician, and in referencing the attacks as to both victims in a single verdict director. The appellant's conviction was affirmed by this court in *State v. Johnson,* 132 S.W.3d 313 (Mo.App.2004).

On August 13, 2004, the appellant timely filed a *pro se* motion to vacate, set aside, or correct the judgment, pursuant to Rule 29.15. On November 15, 2004, appointed counsel filed a Rule 29.15(e) statement in lieu of an amended motion. On January 19, 2005, the motion court issued its findings of fact and conclusions of law, denying, without an evidentiary hearing, the appellant's motion.

This appeal follows.

## Standard of Review

Appellate review of a motion court's ruling on a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). "Findings and conclusions are clearly erroneous only if, after review of the entire record, we are left with a definite and firm impression that a mistake has been made." *Anderson v. State,* 66 S.W.3d 770, 774 (Mo.App.2002). Regardless of the motion court's findings and conclusions in denying the appellant's motion, without an evidentiary hearing, we must affirm the court's decision if sustainable upon other grounds. *Collins v. State,* 54 S.W.3d 226, 229 (Mo.App.2001).

## I.

In his sole point on appeal, the appellant claims that the motion court clearly erred in overruling his Rule 29.15 motion, without granting an evidentiary hearing, because, in his motion, he alleged facts, not conclusions, which were not refuted by the record, and which, if true, would establish that he received ineffective assistance of counsel as a result of his appellate counsel's failure to claim on direct appeal that the trial court erred in overruling the appellant's pretrial motion *in limine* and admitting photographs of the victims showing their injuries.

In order to prevail on a claim of ineffective assistance of counsel, the movant must satisfy the two-prong test of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), which requires "proof by a preponderance of the evidence that: (1) his trial counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) his defense was prejudicial as a result." *Anderson,* 66 S.W.3d at 775. "If the movant fails to satisfy either the performance or the prejudice prong of the test, then we need not consider the other and his claim for ineffective assistance of counsel must fail." *Id.*

The motion court is not required to hold an evidentiary hearing on a motion for post-conviction relief in all circumstances. "If the court shall determine the motion and the files and records of the case conclusively show that the movant is entitled to no relief, a hearing shall not be held." Rule 29.15(h). Thus, to be entitled to an evidentiary hearing under Rule 29.15, the movant (1) must plead facts, not conclusions, which, if true, would warrant relief; (2) the facts pled must not be refuted by the record; and (3) the movant must have been prejudiced. *Wainwright v. State,* 143 S.W.3d 681, 686 (Mo.App.2004). If the movant's motion fails to satisfy all of these requirements, the motion court may properly deny the motion without an evidentiary hearing. *Id.*

To satisfy the performance prong of the test, the movant must identify specific acts or omissions of counsel that resulted from

unreasonable professional judgment, which the motion court must find are outside the range of competent assistance. *Peterson v. State*, 149 S.W.3d 583, 585 (Mo.App. 2004). In identifying these acts or omissions, the movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Anderson*, 66 S.W.3d at 775 (*quoting State v. Simmons*, 955 S.W.2d 729, 746 (Mo. *banc* 1997)). The Supreme Court, in *Strickland*, refused to define "sound trial strategy" since "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. A reviewing court, therefore, "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052. Because of the inherent difficulty of this review, the movant has a heavy burden to overcome the presumption that counsel was competent. *Id.*

To satisfy the prejudice prong of the test, "the movant 'must show a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.'" *Anderson*, 66 S.W.3d at 775 (*quoting Simmons*, 955 S.W.2d at 746). Under this prong, simply showing that the alleged error had a conceivable effect on the trial outcome is not sufficient; instead, the appellant must show that, absent the error, there is a reasonable probability that he would have been found not guilty. *Id.*

The standard for a claim of ineffective assistance of appellate counsel is essentially the same as that employed for ineffective assistance of trial counsel, as set forth in *Strickland. Evans v. State*, 70 S.W.3d 483, 485 (Mo.App.2002). The movant must show deficient performance of counsel and resulting prejudice. *Id.* The standard is explained in *Moss v. State*, 10 S.W.3d 508, 514–15 (Mo. *banc* 2000) (citation omitted):

> To support a [Rule 29.15] motion due to ineffective assistance of appellate counsel, strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it. The right to relief ... due to ineffective assistance of appellate counsel inevitably tracks the plain error rule; *i.e.*, the error that was not raised on appeal was so substantial as to amount to a manifest injustice or a miscarriage of justice.

Applying the *Moss* standard, to be entitled to an evidentiary hearing on his motion for ineffective assistance of appellate counsel, the motion had to allege facts, not conclusions, which were not refuted by the record, demonstrating that the trial court obviously erred in overruling his motion *in limine* and admitting the photographs of the victims, resulting in manifest injustice or a miscarriage of justice. In that regard, the appellant alleged in his motion that it was obvious or plain trial error for the trial court to have admitted the photographs in question on two bases: (1) the State failed to lay a proper foundation for admission of the photographs by not introducing, as required, any evidence demonstrating who took the photographs, when they were taken, how many were taken, and under what conditions they were taken; and (2) the probative value of the pictures was clearly outweighed by their prejudicial effect in that the appellant admitted to striking the victims and the photographs had been unduly highlighted to

emphasize the relatively minor injuries of the victims for the purpose of inflaming the jury.

The purpose of a motion *in limine* is simply to alert the trial court and opposing counsel to evidence which the movant anticipates may be objectionable. As such, the court's ruling on a motion *in limine* is interlocutory in nature and subject to change during the trial so that it preserves nothing for appeal. *State v. Mickle*, 164 S.W.3d 33, 54–55 (Mo.App. 2005). In order to properly preserve an objection to the admission of evidence, a specific objection must be made to the evidence at the time it is offered for admission. *Id.* at 55. "Missouri courts strictly apply these principles based on the notion that trial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." *Id.* Thus, the appellant, in order to preserve for appellate review his claim that the photographs in question were inadmissible at trial, had to object to their admission.[3]

The State sought to admit the photographs in question through the testimony of Welch. In that regard, he testified, in pertinent part, on direct examination by the State:

Q: When you went into the complex 2 office, what did you see?

A: As I entered the complex 2, there were—I noticed three individuals: Chris Swicord, Mr. Webster, Timothy Johnson. Mr. Swicord looked very disoriented and confused and like he'd been beat up. Mr. Webster who was on the concrete floor by his desk, or by a desk,

and Mr. Johnson was standing across the room from us, from where I was.

MR. FARROW: Your Honor, may I approach the witness?

THE COURT: You may.

Q: Let me hand you State's Exhibit 2 through 7. They've been so labeled for purposes of identification. They're photographs. And ask you if you recognize those photographs. Ask you to look through them.

A. Yes, sir.

Q. Okay. They represent two different people, is that correct?

A. Yes. Yes, they do.

Q. Do you recognize who those people are?

A. Mr. Webster and Mr. Swicord.

Q. The way they appear in those photographs, is that the way they looked on May 2nd of 2000 when you saw them?

A. Yes, sir. There was more blood on Mr. Swicord's face than in the picture, but yes, roughly.

Q. Is that a fair and accurate representation of how they looked?

A. Yes, sir.

Q. At least after they were cleaned up?

A. Yeah.

MR. FARROW: Your honor, I'd ask that Exhibits 2 through 7 be admitted into evidence at this time.

THE COURT: Any objections to the admission of exhibits—State's Exhibits 2 through 7?

THE DEFENDANT: What is 2 through 7? Let me see that. I've never seen it. No.

THE COURT: There being no objection, State's Exhibits 2 through 7 are admitted.

---

**3.** Although the appellant appeared *pro se* at trial, he is bound by the same procedural rules as parties represented by counsel. *State v. Winrod*, 68 S.W.3d 580, 586 (Mo.App.2002).

By affirmatively stating that he did not have any objection to the admission of the photographs in question, the appellant not only waived any appellate review for preserved error of this issue, but also waived plain error review thereof, pursuant to Rule 30.20.[4] *State v. Phelps,* 167 S.W.3d 804, 806 (Mo.App.2005); *State v. Mead,* 105 S.W.3d 552, 556 (Mo.App.2003).

■■■■ Because the appellant waived any appellate review of the admission of the photographs of the victims, including plain error review, under Rule 30.20, by affirmatively stating at trial that he had no objection to their admission, he cannot now convict his appellate counsel of being ineffective for failing to raise the issue on direct appeal. For appellate counsel to do so, would have been for naught, since it was not subject to review under Rule 30.20 or otherwise. Appellate counsel is not ineffective for failing to raise a frivolous claim on direct appeal. *Anglin v. State,* 157 S.W.3d 400, 402 (Mo.App.2005). Hence, even if the allegations of the appellant's motion are taken as true, the record clearly and conclusively refutes the fact that the appellant's appellate counsel failed to raise on direct appeal a clearly obvious trial error with respect to the admission of the photographs in question, such that the motion court was justified on that basis in denying the appellant's claim of ineffective assistance of appellate counsel, without an evidentiary hearing.

4. The same is not true with respect to preserving challenges to jury instructions. The affirmative waiver of any objection to the giving of a jury instruction, either by stating "no objection" or by proffering the very instruction which the proffering party challenges on appeal, does not waive plain error review under Rule 30.20. *State v. Beck,* 167 S.W.3d 767, 777–78 (Mo.App.2005). The distinction in treatment between objections to the admission of evidence and objections to the giving of jury instructions, with respect to

## Conclusion

The motion court's order denying the appellant's Rule 29.15 motion for post-conviction relief, without an evidentiary hearing, is affirmed.

NEWTON and HARDWICK, JJ., concur.

waiving plain error review, would appear to be based on the fact that the admissibility of evidence is a matter within the sound discretion of the trial court, *Nelson v. Waxman,* 9 S.W.3d 601, 603 (Mo. *banc* 2000); *State v. Isa,* 850 S.W.2d 876, 891 (Mo. *banc* 1993), while as to the giving of jury instructions, the trial court has a *sua sponte* duty to instruct the jury on the correct law, as to a substantial right, to insure that the defendant receives a fair trial, *State v. Westfall,* 75 S.W.3d 278, 281 (Mo. *banc* 2002).