Cornelle D. WILLIAMS, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 67306.

Missouri Court of Appeals,
Western District.

March 4, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 2008.

Application for Transfer Denied June 24, 2008.

Jeannie M. Willibey, Kansas City, MO, for Appellant.

Shuan J. Mackelprang, Jefferson City, MO, for Respondent.

Before: LOWENSTEIN, P.J., ELLIS and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

### FACTUAL BACKGROUND:

The issue underlying this case is whether the failure of trial counsel to prove the defendant's indigency and his subsequent inability to seek the opinion of a psychiatric expert as to defendant's mental health entitled the defendant to post-conviction relief. Cornelle Williams was tried by jury and convicted of second-degree murder, assault in the first degree, and armed criminal action with respect to events that occurred on February 24, 2001. In November of 2002, the court sentenced him to terms totaling seventy years imprisonment. After Williams' judgment and sentence were affirmed by this court (*State v. Williams*, 134 S.W.3d 766 (Mo.App.2004)), he filed this Rule 29.15 motion, claiming that his conviction was the result of ineffective assistance rendered by his trial attorney. He now appeals the denial of his motion. The facts recounted here are contained in pages 768 to 772 of the opinion of this court on direct appeal. Williams' sole point there was the need for funds from the state to see an expert to evaluate his mental state at the time of the offense and to "advise the defense on the availability . . . of mental defenses." *Williams*, 134 S.W.3d at 768–69.

Williams was represented by privately retained counsel ("Trial Counsel"). The attorney's fees were paid by Williams' father. It was Williams' position in several pre-trial motions that, although he was represented by private counsel, he had no resources available for the purpose of funding examinations or consultations with a psychiatrist.

On February 7, 2002, Trial Counsel filed a "Motion for Funds" requesting that funds be made available by the court "to engage a psychiatric expert to evaluate the defendant and advise the defense." As evidence of the need for psychiatric evaluation, Trial Counsel presented hospital discharge summaries from 1998 and 1999, when Williams had been involuntarily committed to a mental health facility. The summaries diagnosed Williams as suffering from "schizophreniform type psychosis." In the motion for funds, Trial Counsel argued that an evaluation at a state facility would be insufficient to provide a basis for a factual defense of innocence, and that *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), required a distribution of funds under the facts at bar. On February 8, the judge ordered an examination by the Department of Mental Health (DMH) pursuant to section 552.020, RSMo and a corresponding report that would include opinions as to whether the defendant suffered from a mental disease or defect and whether the defendant lacked capacity to *understand the proceedings* and assist in his own defense. *Absent* from the order was a request for an opinion addressing whether the defendant had, at the time the crime was committed, the *capability to know* and appreciate the nature, quality, or *wrongfulness of his conduct*, as Trial Counsel refused the court's offer to order an examination pursuant to section 552.030.[1] On February 27, Trial Counsel filed a "Motion for Confidential Consultation," which requested that the court order a confidential examination by DMH to assess the mental condition of the defendant at the time of the offense. The results of the requested examination would

---

1. Section 552.030.1, RSMo states in part, "A person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was *incapable of knowing* and appreciating the nature, quality, or *wrongfulness of such person's conduct*." (Emphasis added). The section provides for an examination and report including an opinion as to such capability.

be shared only with the defendant until defendant decided to file an intent to rely on the defense of mental disease or defect. This request was denied by the court. In June and July of 2002, Trial Counsel filed motions asking for a second competency evaluation, since defendant was found competent to stand trial based on the examination ordered on February 8. On July 3, the judge entered an order allowing defendant to obtain an evaluation by a private psychiatrist, psychologist, or physician, the results of which would be submitted in a report to the circuit court, but this evaluation would be at the *defendant's expense*.[2]

In his argument for an award of funds, Trial Counsel sought to prove that Williams was indigent. To this end, he placed Williams on the stand and asked the following questions about his financial situation:

Q: Now it's true that you and your family hired me to represent you; is that correct?

A: That's correct.

Q: Now that was using a combination of your funds and your family— funds that your family had available; is that right?

A: That's also correct.

Q: Do you have any further funds available?

A: No, I do not.

Q: Do you have any assets that are available to you now or any bank accounts or anything of that nature that you could use?

A: No, I do not.

Q: How old are you?

A: I'm 21-years-old.

Q: And have you asked your family, in fact, to provide the funding for an evaluation and they haven't been able to do so either; is that true?

A: That's correct.

The trial court denied the funds Williams requested but did not specify the grounds for its decision. Trial Counsel's motion for findings of fact and conclusions of law stating the reasons for the denial was also denied. On direct appeal, this court recognized that, as a prerequisite to receiving funds under *Ake v. Oklahoma*, Williams was required to prove his indigence by affidavit pursuant to section 600.086.3, RSMo and 18 C.S.R. 10–3.010. *See State v. Williams*, 134 S.W.3d at 773. This court found that Williams' testimony as to not having any "assets ... or any bank accounts or anything of that nature" fell far short of the specifics necessary for the affidavit. *Id.* at 774. On this ground, the denial of funds was affirmed. *Id.*

At the hearing on this Rule 29.15 motion, Williams argued that Trial Counsel was ineffective in failing to properly prove Williams' indigence. The court, in denying the motion, focused on Williams' failure to prove he was prejudiced due to Trial Counsel's inadequacy. Since Williams provided no evidence that, had he been granted funds for an expert, an expert would have been available and would have testified in such a way as to provide a viable defense, the motion court decided that the movant's burden of proving prejudice had not been met.

Williams' sole point in this appeal asserts error in the circuit court's denial of his Rule 29.15 motion in that Trial Counsel provided ineffective assistance by failing to properly establish that Williams was indigent, which Williams claims was the cause of the trial court's denial of his request for

---

**2.** The procedural history of this case is extensive and has been condensed in the interest of clarity. For a more detailed look at such background, see *State v. Williams*, 134 S.W.3d 766 (Mo.App.2004).

funds to retain an expert witness on the issue of mental health. He argues that, had Trial Counsel employed the proper procedures for proving indigence, the trial court would have been required to award funds under *Ake v. Oklahoma.*

### STANDARD OF REVIEW:

Appellate review of a motion court's denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether its findings of fact and conclusions of law are clearly erroneous. *Williams v. State,* 205 S.W.3d 300, 304 (Mo.App.2006); Rule 29.15(k). "Findings and conclusions are clearly erroneous only if, after review of the entire record, [this court is] left with a definite and firm impression that a mistake has been made." *Johnson v. State,* 189 S.W.3d 640, 644 (Mo. App.2006).

In order to prevail on a claim of ineffective assistance of counsel, a movant must satisfy the two-prong test set out in *Strickland v. Washington. See* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* test requires "proof by a preponderance of the evidence that: (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the movant was prejudiced as a result." *Edgar v. State,* 145 S.W.3d 458, 461 (Mo.App.2004). "If either prong is not satisfied, then [this court] need not consider the other prong, and the claim of ineffective assistance of counsel must fail." *Williams v. State,* 205 S.W.3d at 305.

To satisfy the performance prong of the *Strickland* test, the movant must identify specific acts or omissions by trial counsel that were not in conformance with the range of competent representation, or that were the result of unreasonable professional judgment. *Johnson v. State,* 189 S.W.3d at 644–45. There is a presumption that the challenged action was sound trial strategy, which the movant must overcome. *Id.* at 645. As there is no single definition of "trial strategy"; this court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* (internal quotation marks and citation omitted).

To satisfy *Strickland's* prejudice prong, the movant must show "a reasonable probability that, but for counsel's alleged deficiencies, the result of the proceeding would have been different." *Edgar v. State,* 145 S.W.3d at 461. "[S]imply showing that the alleged error had a conceivable effect on the trial outcome is not sufficient; instead, the [movant] must show that, absent the error, there is a reasonable probability that he would have been found not guilty." *Johnson v. State,* 189 S.W.3d at 645.

### DISCUSSION:

*Performance*

With regard to the performance prong, it is apparent that Trial Counsel's failure to use the proper method to prove Williams' indigence is not within the range of competent representation to which a defendant is entitled. The fact that Williams had available private counsel for his defense did not automatically preclude him from seeking state funds for an expert witness. *See State v. Huchting,* 927 S.W.2d 411, 419 (Mo.App.1996).[3] However-

---

3. *Huchting* explains, "jurisdictions ... have uniformly held that the retention of private counsel does not cause a defendant to forfeit his or her eligibility for state assistance in paying for expert witness or investigation expenses." 927 S.W.2d at 419. "Many of those opinions point out that a defendant who spends down his resources in the middle of

er, Missouri courts have found that, due to the requirements of section 600.086.3, "an affidavit of indigence is a pre-requisite for requesting funds to employ an expert witness," just as such an affidavit is required where a defendant seeks the appointment of counsel. *Id.* Section 600.086.3 states, "Any such person claiming indigency shall file with the court an affidavit which shall contain the factual information required by the commission under rules which may be established by the commission in determining indigency." The factual information required by the regulation accompanying section 600.086.3 includes specifics as to the defendant's ability to post bond; the defendant's income and the income of any dependents, spouse, or parents under certain circumstances; disability, pension, unemployment, and social security payments that the defendant may be receiving; debts and expenses; and other assets available to the defendant. *See* 18 C.S.R. 10–3.010. Trial Counsel did not file the required affidavit of indigence, but instead sought to prove indigence solely through Williams' testimony. As to the information required by the regulation, Trial Counsel questioned Williams as follows:

Q: Do you have any further funds available?

A: No, I do not.

Q: Do you have any assets that are available to you now or any bank accounts or anything of that nature that you could use?

A: No, I do not.

Q: How old are you?

A: I'm 21–years–old.

Q: And have you asked your family, in fact, to provide the funding for an evalu-

ation and they haven't been able to do so either; is that true?

A: That's correct.

On direct appeal, this court found such questioning to be wholly insufficient when compared to the detailed requirements of 18 C.S.R. 10–3.010. *See Williams*, 134 S.W.3d at 773–74. The opinion explained, "Obviously, [Williams'] mere conclusory statement at trial that he did not have 'any assets' or 'any bank account or anything of that nature' failed to rise to the level of information required by the affidavit.... [G]iven the paucity of evidence in the record concerning the appellant's indigency, we cannot say that the trial court erred in denying his request for state funds to employ an expert witness." *Id.* at 774.

Trial Counsel erred in how he chose to fulfill the indigence prerequisite for attaining a state-provided expert. The question remains as to whether this approach constituted a failure to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances. For the appointment of counsel and experts, Missouri case law plainly requires indigence to be proven in accordance with section 600.086.3. Trial Counsel did not comply with section 600.086.3 or its accompanying regulation when he attempted to prove indigence by merely eliciting testimony from his client that he had no further funds available. In fact, Trial Counsel admitted at the Rule 29.15 hearing that he had conducted no research to determine the proof necessary to establish the indigence of his client.

The motion court found that "the method in which [Trial Counsel] presented evidence establishing [Williams'] indigence was reasonable." It continued, "Trial [C]ounsel chose to elicit live testimony

his defense or who relies on the largesse of friends and family for initial defense expenses is no less entitled to due process and funda-

mental fairness than is a defendant who enters the judicial system penniless." *Id.*

from [Williams] concerning his financial status, rather than to rely on a paper affidavit." This conclusion is clearly erroneous. Irrespective of whether live testimony was a reasonable choice of trial strategy as a substitute for the section 600.086.3 affidavit in this situation, the testimony presented by Trial Counsel was far from sufficient to prove indigence.

*Prejudice*

Having concluded that Trial Counsel was ineffective in establishing indigency, this court must now determine if the denial of funds to investigate mental illness or defect resulted in prejudice. In order for prejudice to exist here, it must be shown that, had Trial Counsel used the correct method to prove indigence, Williams would indeed have been found indigent by the trial court and would, therefore, have been entitled to the appointment of an expert to assist in his defense. At the Rule 29.15 hearing, Williams testified as follows:

Q: What is your date of birth, Mr. Williams?

A: 12/3/'80.

Q: Who paid your attorney's fees for [Trial Counsel]?

A: My mother and my father.

Q: Were you ever able to post a bond?

A: No, I was not.

Q: Have you ever been married, sir?

A: No.

Q: Do you have any children who are dependent on you?

A: No.

Q: Okay. Have you ever owned a house?

A: No.

Q: Have you ever owned any land?

A: No.

Q. Have you ever received, I'll ask you a list here. Have you ever received any of the following forms of Welfare; food stamps?

A: No.

Q: Have you ever received AFDC benefits?

A: No.

Q: Have you ever received unemployment compensation?

A: No.

Q: Have you ever received Social Security benefits?

A: No.

Q: Have you ever received benefits from the Veterans Administration?

A: No.

Q: Between the date of your arrest, again, February 25, 2001, till the start of your trial, which I believe was October 7th of 2002, in that time period, did you have more than one hundred dollars in either a checking account or a savings account?

A: No, not to my knowledge.

Q: Did you have a life insurance policy that had any equity?

A: No.

Q: Did you have a life insurance policy at all?

A: No.

Q: Did you own any stocks?

A: No.

Q: Did you own any bonds?

A: No.

Q: Did you own any mutual funds?

A: No.

Q: Between the date of your arrest and the time the trial started, did you have any source of income?

A: No.

Williams also testified that, although he owned two automobiles at the time of his trial, each of them secured debts that met

or exceeded their market value, leaving him no equity in either. This testimony addresses the factors identified by 18 C.S.R. 10–3.010.3 as critical to a finding of indigence.[4] It is apparent from the record that, had Trial Counsel correctly placed this evidence before the trial court, a finding of indigence would have been proper.

■ Ample evidence was provided at the Rule 29.15 hearing that Williams was, in fact, indigent at the time of his trial. Therefore, the crucial questions become whether, as an indigent defendant, Williams was entitled to the appointment of an expert to assist in his defense and whether the chapter 552 evaluations offered by the trial court would suffice to satisfy such a right. Williams argues that *Ake v. Oklahoma* requires the trial court to provide a psychiatrist to indigent defendants who show that insanity will be a significant issue at trial.

■ In *Ake v. Oklahoma*, the United States Supreme Court examined a situation where an indigent defendant facing the death penalty petitioned the trial court to provide for the assistance of a psychiatrist, but was denied. *See* 470 U.S. 68, 71–73, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

The Supreme Court held that, "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, [due process] requires that a state provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Ake*, 470 U.S. at 74, 105 S.Ct. 1087. The Court reasoned that the "private interest in the accuracy of a criminal proceeding that places an individual's life or liberty[5] at risk" outweighed concerns as to the financial burden to the state in providing expert assistance. *See Id.* at 78–84, 105 S.Ct. 1087. "This is especially so," it explained, "when the obligation of the state is limited to provision of one competent psychiatrist, as it is in many states, and as we limit the right we recognize today." *Id.* at 78–79, 105 S.Ct. 1087. The result of *Ake* is that, once an indigent defendant has made the threshold showing that sanity will be a significant trial issue, the state is required to "at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense" in order to ensure due process.

**4.** 18 C.S.R. 10–3.010.3 requires consideration of the following factors:

1. Debts and Expenses—Debts should be taken into consideration to the extent that they are reasonable and necessary. Debts are considered only if actual payments are being made;

2. Spouse's Income—The spouse's financial status shall be considered unless the spouse is the alleged victim;

3. Parent's Income—The parent's income should be considered if they support the defendant and the defendant is under eighteen (18) years of age unless a parent is an alleged victim of the charged offense. Defendants eighteen (18) years or older shall be considered independent from family income unless they are full-time students or are dependent upon their parents or when one or both parents post bond; and

4. Assets—If the person owns or is buying a home, the equity must be determined and considered on the question of indigence. Bank accounts, stocks, bonds, jewelry, equity in insurance and any other financial assets must be considered.

**5.** The Eighth Circuit, in a Missouri case, dispelled arguments that *Ake* should only be applied to capital cases by stating "[This court does not] draw a decisive line for due process purposes between capital and non-capital cases. To be sure, the defendant's interest in staying alive is greater and different in kind from his interest in avoiding a prison term, but the latter interest, in our opinion, still outweighs the state's interest in avoiding the relatively small expenditure that would be required." *Little v. Armontrout*, 835 F.2d 1240, 1243–44 (8th Cir.1987).

*Id.* at 83, 105 S.Ct. 1087. As a limit on the newly created right, the Court continued, "This is not to say ... that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Id.*

The first hurdle for Williams is the necessity of a threshold showing that his sanity would be a significant issue at trial. A mere allegation of an abnormal mental condition is not enough to cross this threshold. *State v. Clemons*, 946 S.W.2d 206, 222 (Mo. banc 1997). Facts are necessary to support the allegation that a defendant's mental capacity is at issue in the case and to show the seriousness of the allegation and its relevancy to issues before the court. *Id.* Documentation in the form of medical records revealing a history of mental health diagnoses has been found to be a sufficient preliminary showing that mental health will be a significant issue at trial. *See Starr v. Lockhart*, 23 F.3d 1280 1288–89 (8th Cir. 1994) (defendant presented records showing a diagnosis of mild to moderate retardation). In his motion for funds, Williams informed the trial court of two mental health facility discharge summaries that diagnosed Williams with "schizophreniform type psychosis." These summaries were produced in 1998 and 1999. Trial Counsel supplied the 1999 summary for the court to consider with his arguments for the motion.

The trial court had before it information that met the *Ake* threshold. The crimes for which Williams was convicted took place in February of 2001, just two years after the second discharge summary. Multiple diagnoses of schizophrenia within such a short time of the act underlying a criminal trial should have put the trial court on notice that the mental health of the defendant would be a significant factor at trial. Consequently, after making this preliminary showing, Williams was entitled under *Ake* to the protections granted therein.

Having found that Williams' situation triggered the protections of *Ake* for indigent defendants, it is now necessary to decide whether Williams' rights were satisfied by the chapter 552 procedures ordered and offered by the trial court. In response to Williams' requests for a psychiatrist to assist in his defense, the trial court ordered a section 552.020 evaluation of Williams' mental capacity to stand trial and offered to order an examination pursuant to section 552.030, but Trial Counsel declined the offer. It was the State's position that the chapter 552 procedures were sufficient to meet the requirements of *Ake*, while Williams argued that *Ake* requires the state to provide funds for an expert of his choice.

Chapter 552, RSMo is entitled "Criminal Proceedings Involving Mental Illness" and contains, among others, provisions relating to the evaluation of a defendant's capacity to stand trial and the examination of defendants who either plead mental disease or defect excluding criminal responsibility (commonly referred to as "not guilty by reason of insanity" or "NGRI") or give notice that they will rely on such a defense at trial. *See* §§ 552.020, 552.030. Section 552.020 states, in pertinent part,

2. Whenever any judge has reasonable cause to believe that the accused lacks mental fitness to proceed, he shall, upon his own motion or upon motion filed by the state or by or on behalf of the accused, by order of record, appoint one or more private psychiatrists or psychologists, as defined in section 632.005, RSMo, or physicians with a minimum of one year training or experience in providing treatment or services to mentally retarded or mentally ill individuals, who are neither employees nor contractors of

the department of mental health for purposes of performing the examination in question, to examine the accused; or shall direct the director to have the accused so examined by one or more psychiatrists or psychologists, as defined in section 632.005, RSMo, or physicians with a minimum of one year training or experience in providing treatment or services to mentally retarded or mentally ill individuals. The order shall direct that a written report or reports of such examination be filed with the clerk of the court....

....

4. If the accused has pleaded lack of responsibility due to mental disease or defect or has given the written notice provided in subsection 2 of section 552.030, the court shall order the report of the examination conducted pursuant to this section to include, in addition to the information required in subsection 3 of this section, an opinion as to whether at the time of the alleged criminal conduct the accused, as a result of mental disease or defect, did not know or appreciate the nature, quality, or wrongfulness of his conduct or as a result of mental disease or defect was incapable of conforming his conduct to the requirements of law. A plea of not guilty by reason of mental disease or defect shall not be accepted by the court in the absence of any such pretrial evaluation which supports such a defense....

....

6. The clerk of the court shall deliver copies of the report to the prosecuting or circuit attorney and to the accused or his counsel. The report shall not be a public record or open to the public. Within ten days after the filing of the report, both the defendant and the state shall, upon written request, be entitled to an order granting them an examination of the accused by a psychiatrist or psychologist, as defined in section 632.005, RSMo, or a physician with a minimum of one year training or experience in providing treatment or services to mentally retarded or mentally ill individuals, of their own choosing and at their own expense.

Sections 552.020.4 and 552.030.3 work together to require, as a prerequisite to court acceptance of an NGRI plea, an examination of the defendant followed by a report as to whether the "accused, as a result of mental disease or defect, did not know or appreciate the nature, quality, or wrongfulness of his conduct or as a result of mental disease or defect was incapable of conforming his conduct to the requirements of law." §§ 552.020.4, 552.030.3. Section 552.030.3 states,

3. Whenever the accused has pleaded mental disease or defect excluding responsibility or has given [written notice of intent to rely on such a defense], and such defense has not been accepted [by the state], the court shall, after notice and upon motion of either the state or the accused, by order of record, appoint one or more private psychiatrists or psychologists, as defined in section 632.005, RSMo, or physicians with a minimum of one year training or experience in providing treatment or services to mentally retarded or mentally ill individuals, who are neither employees nor contractors of the department of mental health for purposes of performing the examination in question, to examine the accused, or shall direct the director of the department of mental health, or the director's designee, to have the accused so examined by one or more psychiatrists or psychologists, as defined in section 632.005, RSMo, or physicians with a minimum of one year training or experience in providing treatment or services to mentally retarded or mentally ill indi-

viduals designated by the director, or the director's designee, as qualified to perform examinations pursuant to this chapter. The order shall direct that written report or reports of such examination be filed with the clerk of the court.... Within ten days after receiving a copy of such report, both the accused and the state shall, upon written request, be entitled to an order granting them an examination of the accused by an examiner of such accused's or its own choosing and at such accused's or its expense.

Both sections provide that, within ten days after a copy of the report is filed with the court (§ 552.020) or received by the defendant (§ 552.030), the defendant is entitled to an order granting an examination by another psychiatrist or psychologist. §§ 552.020.6, 552.030.3. However, this second opinion comes at the defendant's expense. *Id.*

The due process guarantee of *Ake* ensures an indigent defendant "access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake*, 470 U.S. at 83, 105 S.Ct. 1087. Sections 552.020 and 552.030 do not provide the type of expert assistance envisioned by the *Ake* court. Under both sections, the role of the mental health professional is limited to an examination of the defendant followed by a report that is provided to the court and the parties. Neither section of the statute provides an expert to assist in evaluation, preparation, or presentation of the defense. Even the opportunity to subpoena and question the professional who conducts the examination would not constitute the type of assistance *Ake* requires. Furthermore, while provisions do exist for the re-examination by a psychiatrist of the defendant's choosing, such examination is to occur at the defendant's expense, so its availability is of little

help to the indigent defendant. *See supra,* §§ 552.020.6, 552.030.3.

The extent of the due process right created by *Ake* is discussed in *Starr v. Lockhart,* 23 F.3d 1280 (8th Cir.1994), and *Little v. Armontrout,* 835 F.2d 1240 (8th Cir. 1987). The *Armontrout* court discussed the roots of *Ake,* noting that "[w]hen the state brings criminal charges against an indigent defendant, it must take steps to insure that the accused has a meaningful chance to present his defense," and "[w]hile the state need not provide the indigent with all the tools the wealthy may buy, it must provide the defendant with the 'basic tools of an adequate defense.'" 835 F.2d at 1243 (citing *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) and *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971)). *Armontrout* explains that *Ake* extended the definition of "basic tools" to include the appointment of a psychiatric expert for a defendant in certain situations. *Id.* The *Lockhart* court found that the availability and assistance guaranteed in *Ake* "requires more than permission to subpoena an expert and question him or her on the stand." *Lockhart,* 23 F.3d at 1291. It explained that, before *Ake,* "the ability to subpoena and question a neutral expert on whose examination both the state and the defense were relying may have satisfied due process." *Id.* at 1290–91. However, *Ake* brought about a fundamental change in the requirements of due process on this issue. *Id.; Ake v. Oklahoma,* 470 U.S. 68, 85, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

*Ake* demands more in the form of expert assistance than chapter 552 provides. It is apparent that this issue cannot be avoided by allowing the defendant to call a chapter 552 expert as a witness. On the other hand, *Ake* expressly states that its holding

does not produce a constitutional right for an indigent defendant to choose a psychiatrist of his liking or to receive funds for that purpose. *Ake*, 470 U.S. at 83, 105 S.Ct. 1087. The solution that emerges is the appointment of a psychiatrist by the trial court, in situations where the *Ake* threshold has been met, to provide expert services to the defendant. This result is consistent with *Ake's* grouping of expert psychiatric assistance with assistance of counsel as basic tools to a defense. *See Id.* at 76–78, 105 S.Ct. 1087. The appointed psychiatrist must, at minimum, be made available to the defendant for purposes of "conduct[ing] an appropriate examination and assist[ing] in evaluation, preparation, and presentation of the defense." *Id.* at 83, 105 S.Ct. 1087.

■■■ Since Williams was not provided with the type of expert assistance required under *Ake*, which was due to his attorney's failure to prove indigence, the remaining question regarding the validity of his Rule 29.15 claim is whether prejudice resulted from the lack of expert assistance. A finding of prejudice requires a reasonable probability that the result of the trial would have been different were it not for the deficiencies of trial counsel. *Johnson v. State*, 189 S.W.3d 640, 645 (Mo.App. 2006). A "reasonable probability" is one sufficient to undermine confidence in the trial's outcome. *Ringo v. State*, 120 S.W.3d 743, 745 (Mo. banc 2003). As discussed above, Williams raised a serious question before the trial court as to his sanity at the time of the offenses for which he was convicted. The fact that Williams' family had him committed in 1998 and 1999 to a mental health facility and discharge summaries from both involuntary commitments described a serious psychosis underlies the reasonableness of an independent psychiatric examination for determination of pursuing a not guilty by reason of insanity defense or other possible trial strategy. As a result of Trial Counsel's failure to prove indigence, Williams was prevented from receiving the assistance of an appointed psychiatric expert to which he was entitled under *Ake.* Williams' ability to evaluate and assert the defense of insanity was crippled by his lack of access to a psychiatrist for those purposes. Operating in absence of such a basic trial tool, Williams was denied the opportunity for a fair trial with respect to the issue of his sanity and its effect on his responsibility for the crimes with which he was charged. Under these circumstances, this court finds that there does exist a reasonable probability that the outcome of trial would have been different had Williams been able to avail himself of his due process entitlement to the assistance of a psychiatric expert, such that confidence in the accuracy of the outcome is substantially undermined. Williams was prejudiced by Trial Counsel's failure prove indigence.

The state argues that Williams is not entitled to relief under Rule 29.15 because he produced no evidence at the 29.15 hearing that a psychiatric expert would have testified on his behalf or what the content of such testimony would have been. The motion court relied on this argument in dismissing Williams' 29.15 motion. This court has noted that, "[w]hen a movant claims ineffective assistance of counsel for failure to locate and present expert witnesses, he must show that such experts existed at the time of trial, that they could have been located through reasonable investigation, and that the testimony of these witnesses would have benefited movant's defense." *State v. Colbert*, 949 S.W.2d 932, 945 (Mo.App.1997). While the test set out in *Colbert* is a logical necessity for proof of prejudice in cases where trial counsel failed to call a witness for the defense, it cannot be applied to the instant

case. The basis of Williams' 29.15 claim is that he was financially unable to procure a psychiatric expert for his defense at trial, and that he was deprived of his right to have such assistance provided for him by Trial Counsel's ineffective representation. It would be useless to require such a movant, now proven to have been indigent, to produce at a post-conviction hearing the same expert testimony he could not afford at trial.

In this case, Trial Counsel's requests for funds went beyond that to which the defendant was entitled under *Ake*. *Ake* explicitly states that its holding does not give defendants a right to receive funds for the purpose of hiring a psychiatric expert. *Ake*, 470 U.S. at 83, 105 S.Ct. 1087. In his motions, Trial Counsel asked for "funds for an expert to evaluate the mental state of the defendant at the time of the offense and his competency to proceed." Having already decided that Trial Counsel was ineffective in failing to fulfill the prerequisites necessary to entitle Williams to the assistance of an appointed psychiatrist and that prejudice resulted, it is unnecessary to decide whether counsel was also ineffective in failing to properly phrase his request or whether the motions were sufficient to place on the trial court the duty of appointing an expert. Either way, there exists prejudice due to ineffective assistance of counsel.

After review of the Rule 29.15 motion court's judgment and the record, this court is left with the definite and firm impression that a mistake has been made. The circuit court's denial of Williams' motion for post-conviction relief is clearly erroneous and the result of incorrect conclusions of law. Trial Counsel's representation was deficient and it is reasonably probable that, but for this deficiency, the result of the proceedings would have been different.

Accordingly, the judgment is reversed and the case is remanded for a new trial.

All concur.