**STATE of Missouri, Respondent,**

v.

**Thomas SCHALLER, Appellant.**

**Nos. WD 49851, WD 51754.**

Missouri Court of Appeals,
Western District.

Nov. 19, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 1996.

Application to Transfer Denied
Feb. 25, 1997.

Emmett Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and SPINDEN and SMITH, JJ.

SPINDEN, Judge.

Thomas Schaller appeals his convictions of forcible rape and forcible sodomy of a 15–year–old girl. He asserts that the circuit court abused its discretion by requiring Joe Everhart, Schaller's accomplice, to assert his privilege against self-incrimination in the jury's presence. He also complains of the circuit court's permitting the state to call a rebuttal witness who had not been endorsed and of the circuit court's overruling his motion for post-conviction remedies under Rule 29.15. We affirm.

**Fifth Amendment**

Before trial, the circuit court held a conference to determine whether Everhart would assert his Fifth Amendment right not to incriminate himself.[1] During that conference, the circuit court administered an oath to Everhart, and the prosecutor asked him:

Q ... Are you the same Mr. Everhart who was in trial on March on—

A I'm taking the Fifth.

....

THE COURT: If I ask you further questions, are you always going to take the Fifth Amendment?

MR. EVERHART: Yes, Your Honor.

The state told the circuit court that it wanted to call Everhart to the witness stand to ask him only his name and age and that once Everhart asserted "the Fifth" it planned on reading Everhart's testimony at a previous trial regarding his name and age. The circuit court responded, "You can ask him to state his name, and he will say. Then you ask him if you would like to, how old are you, and he will refuse to answer that. And I don't expect you need to ask him anymore. And you could read from the transcript of his previous deal." Schaller did not object.

The next day at trial, however, Schaller made an oral motion *in limine* asking the circuit court to prohibit the state's calling Everhart as a witness for the sole purpose of "taking the Fifth" in the jury's presence. The state offered to call Everhart to the witness stand without asking him any questions and to read his prior testimony concerning his name and age so as to avoid his asserting his Fifth Amendment right in the jury's presence. Schaller objected. He suggested that the state read Everhart's prior testimony to the jury without calling him to the witness stand. The court responded:

[THE COURT]: [T]he age of Everhart is a relevant fact in this case because— because the issue here is consent of a 15–year–old, and I think it probative of the age of the other person that she's supposed to have had sex with consensually. So what he said, his name and his age, as far as I'm concerned is relevant evidence.

Whether or not—I mean, you're saying that because you agree that they can just read it instead of calling him, they shouldn't get to call him?

[SCHALLER'S ATTORNEY]: I'm saying they've got other reasons for calling him in. They want the jury to look at this guy, and honest he's not a very good looking guy. They are trying to get the point across to the jury why would she want to have sex with this guy.

THE COURT: What's wrong with that inference?

1. The Fifth Amendment to the U.S. Constitution says, "No person ... shall be compelled in any criminal case to be a witness against himself[.]" The United States Supreme Court has declared that this provision is incorporated in the Due Process Clause of the Fourteenth Amendment to the United States Constitution and is, therefore, applicable to state criminal trials. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492–93, 12 L.Ed.2d 653 (1964). Although Schaller did not rely on it, Art. I, § 19, of the Missouri Constitution (1945) provides, "[N]o person shall be compelled to testify against himself in a criminal cause[.]"

[SCHALLER'S ATTORNEY]: The problem is that he's not on trial today. My client, Tom Schaller, is. And [the state is] trying to infer because she didn't want to have sex with him, that she wouldn't want to have sex with my client.

THE COURT: But your evidence in your opening statement is going to be that she agreed to have sex with both of them[.]

. . . .

You told the jury she agreed to have sex with both of them. And the age of this guy and what he looks like, the jury's entitled to know. I don't think there is anything prejudicial about the way he looks. That's his problem, the way he looks. I mean, what the facts are in the case is what the facts are. If they are damaging to your client, that's a bad deal for your client. . . . I think they're entitled to have the jury look at Everhart. I think they're entitled to that.

And [the state] offered to not do anymore than have him sworn in and read, but that's going to look strange as well. It— It's going to look like why have you called this guy up to testify and swore him in, and sit him down and excused him, and then read from those two lines.

So I think the only way to make any sense is to ask him his name, and if he refuses to testify, then—then they are entitled to do it that way. . . .

We're talking about whether it's consensual or not, the age and appearance of—of the co-defendant, when you claim that she had consensual sex with both men. I think it's relevant, so I'm going to allow it.

When the state called Everhart to the witness stand, Schaller renewed his objection based on his previous motion *in limine*. The state responded that it did not want to ask Everhart any questions or give him a chance to assert his Fifth Amendment privilege but wanted only to read Everhart's previous testimony that his name was Joseph L. Everhart and that he was 34–years of age. Schaller objected to Everhart's appearing on the witness stand at all. The circuit court ruled that the state had to call Everhart to the witness stand so he could be identified and then he could assert his Fifth Amendment privilege. The circuit court agreed to take judicial notice of Everhart's prior testimony if he did assert "the Fifth" on the witness stand.

Having called Everhart to the witness stand, the state asked:

Q Please state your name.

A I take the Fifth.[2]

[PROSECUTING ATTORNEY]: Your Honor, at this time, State would ask the Court to take judicial notice of its own files that on a previous date a witness by the name of Joseph L. Everhart—

[SCHALLER'S ATTORNEY]: Objection, your Honor. Can we approach the Bench?

THE COURT: We've—I've already ruled this[.] I've already ruled it.

[SCHALLER'S ATTORNEY]: Okay.

[PROSECUTING ATTORNEY]: That on a previous date a witness, Joseph L. Everhart, identified himself for the Court and stated that his age was 34–years–old.

THE COURT: Do you have any further questions of this witness?

[PROSECUTING ATTORNEY]: I don't believe so, your Honor.

THE COURT: Do you have any questions for the witness?

[SCHALLER'S ATTORNEY]: No questions, your Honor.

THE COURT: You may step down, sir.

■ Schaller complains that the circuit court abused its discretion in permitting Everhart to assert his Fifth Amendment right in the jury's presence because the prejudice of this procedure far outweighed the probative value of the jury's observing Everhart's appearance. The state responds that Everhart's appearance was relevant to demonstrate "the incongruous nature of [Schaller's] claim that the young victim not only consent-

---

**2.** Although the United States Supreme Court has declared that "[d]isclosure of name and address is an essentially neutral act" not protected by the Fifth Amendment, *California v. Byers*, 402 U.S. 424, 432, 91 S.Ct. 1535, 1540, 29 L.Ed.2d 9 (1971), neither party makes an issue of the circuit court's permitting Everhart to refuse to disclose his name.

ed to the sexual acts, but originated the idea to engage in those acts with two men who were more than twice her age." Schaller asserts, however, that the probative value of Everhart's appearance and age was grossly outweighed by the prejudice of having his accomplice take the stand and invoke his Fifth Amendment right before the jury that was deciding his guilt.

■ Neither the state nor the defense may call a witness merely to show the jury that the witness is claiming the right not to testify. *State v. Sanders,* 842 S.W.2d 170, 174 (Mo.App.1992). The question of whether the witness should be permitted to testify when he asserts his Fifth Amendment privilege is a matter for the circuit court's discretion. *State v. Hatter,* 700 S.W.2d 138, 139 (Mo.App.1985). "[W]hen there is a reasonable expectation that the witness will provide some legitimate testimony in addition to invoking his privilege against self-incrimination, or when there is some question as to whether the witness will invoke this privilege at all, the court may require the witness to take the stand." *State v. Sidebottom,* 753 S.W.2d 915, 922 (Mo. banc 1988), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990).

Schaller concedes that Everhart's age and appearance were relevant but argues that the prejudice of Everhart's asserting his right against self-incrimination in the jury's presence outweighed the probative value of his age and appearance. We disagree for two reasons.

First, the only question which Everhart refused to answer was his name. This was not the sort of question which would cause a jury to conclude immediately that he was guilty of the accusations at issue. The state did not ask him whether he had raped or sodomized the victim or whether he had witnessed Schaller's raping or sodomizing her. The state did not attempt to build its case out of inferences arising from Everhart's invocation of his Fifth Amendment right.

Second, what inferences the jury may have drawn from Everhart's refusing to answer his name were not so critical to the state's case that unfair prejudice resulted. The state presented ample evidence to establish

Schaller's guilt. *See State v. Huffman,* 659 S.W.2d 571, 576 (Mo.App.1983).

### Late Endorsement of Witness

■ In his next point, Schaller contends that the circuit court abused its discretion by allowing the state to call Mark Kaly as a witness in the rebuttal portion of its case because the state did not endorse him until the day of trial. We disagree.

On the day before trial, the state learned of Kaly's existence through a letter in the circuit court's file. On the morning of trial, the state moved to endorse Kaly as a witness. The state told the circuit court that it had not found Kaly or served him with a subpoena. Schaller objected to the late endorsement because he had had no opportunity to investigate Kaly or his potential testimony. The circuit court reserved ruling on the motion until Schaller had an opportunity to interview Kaly. The circuit court said that it would "determine at that point whether [Kaly's endorsement was] fair or relevant." The state, however, did not attempt to call Kaly as a witness in its case in chief.

Over Schaller's attorney's objection, the state, during cross-examination, asked Schaller:

Q Did you ever tell anyone that you passed out and didn't remember anything about what happened that night?

A No.

Q You never told Mark Kaly, your AA counselor, that you passed out and didn't remember anything about what happened that night?

A I didn't say "anything." I said after I passed out I don't know what happened.

Q So if he said that, he would be wrong?

A I'm—he probably took it wrong. He could probably clear it up.

Q Okay. We'll give him that chance.

A Okay.

The state called Kaly as a rebuttal witness. Schaller objected, arguing that Kaly indicated that he did not remember everything that Schaller had said at the Alcoholics Anonymous meeting and that Schaller had not had

sufficient time to contact others present at the meeting to determine the circumstances and the nature of Schaller's statements. The circuit court overruled Schaller's objection:

> Okay. He's a rebuttal witness. They don't even have to disclose him. They found out about him, as you all know, the morning of trial when I disclosed what was in the Court's file, as I have an obligation to do. I was going to wait to determine whether or not anything he had to say was probative or relevant. [Schaller] denied that he made the statement to [Kaly], and he also volunteered that he thought [Kaly] could clear it up. So [Kaly] is going to be allowed to testify.

Kaly, who was reluctant to testify because he felt that Schaller's statement during an Alcoholics Anonymous meeting was confidential,[3] stated that he could not remember the conversation he referred to in a letter to the circuit court because of difficulties with his memory.[4] He admitted, however, that he had written a letter to the circuit court stating that Schaller had said during one of the meetings that he had passed out and did not remember anything about what happened.

Schaller contends that we should review this as a late endorsement issue rather than a rebuttal witness issue because "the trial court notified the parties of the existence of the witness either the day before or the morning of trial, at which time the State endorsed the witness and issued a subpoena for his presence and [Schaller] objected to the late endorsement[.]" We disagree.

The state did not attempt to call Kaly as a witness during its case in chief. Kaly's testimony became relevant only when Schaller denied during cross-examination that he had made the statements to Kaly. Schaller told the prosecutor that he was certain that Kaly could clear up the misunderstanding—a virtual invitation for the state to call Kaly as a witness.

■ As a general rule, rebuttal witnesses do not need to be disclosed. *State v. Menteer*, 845 S.W.2d 581, 586 (Mo.App.1992). The circuit court did not abuse its discretion

in allowing the state to call Kaly as a rebuttal witness to offer testimony intended to explain, to counteract, or to disprove testimony offered by Schaller. Moreover, Kaly's lack of memory about the statement did not render his testimony inadmissible. It was a matter of what weight to accord his testimony. Kaly was able to identify the letter that he had written to court and to verify that he had written it after Schaller made the statement.

### Rule 29.15

■ In his last point, Schaller contends that the circuit court erred in denying his Rule 29.15 motion for post-conviction relief. He claims that he established that his attorney was ineffective for not calling two witnesses to testify on his behalf. Schaller asserts that Mary Akers, Schaller's mother, would have contradicted a jailer's testimony that Schaller confessed in a telephone conversation from jail that he had raped the victim. He also contends that Don Gorman, Schaller's cousin, would have contradicted Inge Law's testimony that she was present when Schaller told Gorman that the victim was only 15–years of age. Gorman would have testified, he says, that the victim told him that she was 17–years–old and would soon be 18.

■ Selection of witnesses and the choice not to call additional witnesses is a matter of trial strategy. Such decisions are "virtually unchallengeable" in post-conviction proceedings. *State v. Roe*, 845 S.W.2d 601, 605 (Mo.App.1992). Schaller's trial attorney testified at the evidentiary hearing that she knew of, and had interviewed, Akers and Gorman. She said that she had subpoenaed both, and they were present to testify. She said that she questioned Akers' usefulness at trial because, although she remembered talking to Schaller, she could not recall the conversation specifically. She also said that she had a long interview with Gorman, covering several topics, and that Gorman had made a lot of conflicting statements. From the attorney's assessment of the witnesses, we con-

---

3. The circuit court pointed out that Kaly had waived any potential privilege by writing the court a letter outlining Schaller's conversation during one of those meetings.

4. Kaly was unsure whether he had Alzheimer's disease, senility, or some other type of memory affliction.

clude that her strategy not to call Akers and Gorman as witnesses was reasonable.

■ Moreover, we agree with the circuit court's conclusion that Akers was available only to impeach a state's witness. Failure to call an impeachment witness does not warrant post-conviction relief because the facts, even if true, do not establish a defense. *Id.* at 606.

As to Gorman's testimony, we agree with the circuit court's conclusion that the victim's age was not relevant to the crimes charged. Schaller was not charged with statutory rape or sodomy, and the victim's age was not an element of the crime. Even if knowledge of age was considered for the issue of consent in regard to the disparity in age between the victim and Schaller, this testimony would have been cumulative. Failure to present cumulative testimony would not be a basis for a claim of ineffective assistance of counsel. *Id.* at 605.

### Conclusion

For the foregoing reasons, we affirm the circuit court's judgment of conviction and its denial of Schaller's Rule 29.15 motion for post-conviction relief.

ULRICH, C.J., P.J., and EDWIN H. SMITH, J., concur.