**Terrell E. DAWSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 70702.**

Missouri Court of Appeals,
Western District.

June 15, 2010.

Edward Scott Thompson, St. Louis, MO, for appellant.

Shaun J. Mackelprang and Daniel N. McPherson, Jefferson City, MO, for respondent.

Before Division One: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Terrell Dawson ("Dawson") appeals from the motion court's denial of his Rule 29.15 motion for post-conviction relief. Dawson was convicted of two counts of murder in the first degree, two counts of armed criminal action, one count of kidnapping, and one count of burglary in the first degree. On appeal, Dawson claims the motion court erred in denying his Rule 29.15 motion for post-conviction relief following an evidentiary hearing because he received ineffective assistance of counsel. Dawson contends that trial counsel failed to particularize the prejudice that would result if the trial court did not sever Daw-

son's trial from that of co-defendant Javonty Steward ("Steward"). Dawson also contends that trial counsel was ineffective because trial counsel failed to object to Kenderal Rogers's ("Rogers") invocation of his Fifth Amendment right to remain silent. Dawson maintains that trial counsel's failure to object led the jury to infer that Dawson was guilty. We affirm.

### Factual and Procedural History[1]

▆ On the night of April 24, 2004, Deitrik Davis ("Davis") along with Andre Golden ("Golden") and Allyssa Zahner ("Zahner") went to 51st and Wabash in Kansas City, Missouri to meet with Dawson. When Davis arrived, Dawson walked up to the car, pointed a gun at Davis's head and ordered Golden and Zahner out of the car. Steward got into the driver's seat of the car, Davis moved to the passenger seat, and Dawson and Rogers got into the back seat. Dawson, Steward, and Rogers were armed. Dawson directed Steward to drive to St. Joseph, Missouri, to look for J.R. Boyd ("Boyd"). Dawson was angry with Boyd because Boyd owed Dawson approximately $800. Dawson and Davis believed that Boyd's girlfriend still lived in St. Joseph in a home on 3rd Street.

When the men arrived at the home on 3rd Street, Rogers kicked in the door. The men found Danny Watson, Jr. ("Watson") and Dawn Thorton ("Thorton") in a bedroom. Watson and Thorton had purchased the home in February 2004. The men realized that Watson and Thorton were not Boyd or Boyd's girlfriend. Notwithstanding, Dawson ordered the other men to go look for money, while he held a gun on Watson and Thorton. When the

---

1. We view the facts in the light most favorable to the jury's verdict. *State v. O'Brien*, 857

S.W.2d 212, 215–16 (Mo. banc 1993).

other men returned without money, Dawson yelled at the couple and started hitting Watson in the face with the gun. Dawson instructed Steward to put a pillow over Thorton's head and shoot her. Steward complied. He shot Thorton in the head two times. Watson was shot three times as he attempted to flee. It was unclear who shot Watson. Steward, Dawson, Rogers, and Davis then left the home and drove back to Kansas City.

The men went to an abandoned home where other Dawson acquaintances were holding Golden and Zahner. Dawson held Davis at gun point and told Davis he had to shoot Zahner. Davis refused. Eventually, Dawson told Davis, Golden, and Zahner they could leave once he and his companions were gone.

Dawson was charged on September 30, 2004 with two counts of first degree murder, section 565.020;[2] two counts of armed criminal action, section 571.015; one count of kidnapping, section 565.110; and one count of burglary, section 569.160. Steward was similarly but separately charged.

On March 4, 2005, the prosecuting attorney filed a motion to join the trials of Dawson and Steward, stating that both cases involved the same set of facts and identical witnesses, and that a joint trial would be in the best interests of judicial economy. Dawson's counsel objected to the motion. The motion was sustained.

On July 21, 2005, Dawson's case was reassigned, and new lead trial counsel entered her appearance.[3] Dawson's trial counsel filed a motion to sever Dawson's and Steward's trials on August 26, 2005. The trial court advised trial counsel it had already considered the issue of joinder and that counsel would have to present new evidence on the issue to change the court's mind. At the hearing on the motion to sever in early September 2005, trial counsel argued that Steward had notified the prosecutor that he would rely on the defense of an alibi. Trial counsel articulated concern that this created a prejudice in her ability to formulate a defense for Dawson. Trial counsel argued, by way of example, that should Dawson allege that he and Steward were both involved in the crime but that Dawson's role was limited, Steward's alibi defense would be clearly antagonistic, creating prejudice to each defendant.

The motion to sever was denied on September 9, 2005. The trial court's order stated:

Defendant Dawson has failed to make any factual showing that his right to a fair trial will be prejudiced by the Court denying his motion to sever and instead order separate trials for each defendant. Defendant Dawson has merely claimed that he will be antagonistic to Defendant Steward in his testimony at trial. The allegation that he will be antagonistic toward the co-defendant does not establish that he will be prejudiced by being tried jointly with the co-defendant or show how a joint trial will prevent him from having a fair trial.

2. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

3. Dawson's case was originally assigned to Bert Godding in the Buchanan County public defender's office. However, Godding left the public defender's office and the case was reassigned to Michelle Davidson ("Davidson"). As Davidson had never tried a murder case before, the public defender's office requested assistance from the Office of the State Public Defender. Mary Ellen Young ("Young") was assigned to Dawson's case, and Davidson transferred all responsibilities in the case to Young. At the trial court's request, Davidson stayed on as Young's assistant in the case. All references to Dawson's trial counsel will be to Young unless otherwise indicated.

Trial began on October 13, 2005. The State told the jury in its opening statement that it would be calling Rogers to testify. The State told the jury that Rogers would tell them about the drive to St. Joseph and about what occurred at the victims' home after the door was kicked open. Just before Rogers was to take the stand, Rogers advised the trial court out of the hearing of the jury that he intended to invoke his Fifth Amendment privilege. After questioning Rogers outside the presence of the jury and after lengthy discussions with counsel, the trial court permitted Rogers to take the stand to assert the Fifth Amendment for the limited purposes of allowing the State to explain to the jury why they would not be hearing testimony from Rogers as had been represented during opening.

The State presented multiple witnesses that placed Dawson and Steward at the scene of the crimes. One such witness was Davis, who saw the murders, and who was in the room when Dawson instructed Steward to shoot Thorton. The State also called a witness who testified that he had spoken with Dawson following the murders and that Dawson had told him that when they got to the home in St. Joseph he realized "they [the couple in the house] was the wrong people and they had to numb [shoot] them."

Co-defendant Steward called several witnesses who testified that Steward was at a residence at 4233 Prospect, Kansas City, Missouri, on the night the crimes occurred. However, on cross examination the witnesses were impeached.

Dawson did not testify or call any witnesses at trial. On October 20, 2005, Dawson was convicted of two counts of first degree murder, each with a sentence of life without parole, two counts of armed criminal action, each with a sentence of 99 years, and of kidnapping and burglary,

each with a sentence of fifteen years. All sentences were to be consecutively served.

Dawson's conviction was affirmed on appeal on May 22, 2007. *State v. Dawson,* 222 S.W.3d 337 (Mo.App. W.D.2007).

On August 31, 2007, Dawson filed a *pro se* motion to set aside his convictions based on ineffective assistance of counsel. Counsel was appointed, and an amended Rule 29.15 motion was filed. However, Dawson's counsel died shortly thereafter. New counsel was appointed, and a second amended Rule 29.15 motion was filed on September 3, 2008.

The trial court conducted an evidentiary hearing on Dawson's motion on October 31, 2008. Dawson's trial counsel did not have a clear recollection of the trial proceedings. Trial counsel testified generally that she believed that the joint trials prejudiced Dawson but could not specifically state why she believed he was prejudiced. Trial counsel testified that Steward's alibi witnesses made a "poor attempt at the alibi [and made it look like] we're [counsel for Dawson] putting on false evidence." Trial counsel also testified that the alibi at trial did not go over well with the jury and that it went "belly up." Trial counsel thus testified that Steward's unbelievable alibi witnesses did not help Dawson's case and that if the trial had been severed, those witnesses would not have testified in Dawson's trial.

On January 15, 2009, Dawson's Rule 29.15 motion for post-conviction relief was denied. This appeal follows.

## Standard of Review

Appellate review of a motion court's denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether its findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Williams v. State,* 205 S.W.3d

300, 304 (Mo.App. W.D.2006). Findings of facts and conclusions of law are " 'clearly erroneous only if, after reviewing the entire record, we are left with a definite and firm impression that a mistake has been made.' " *Id.* at 305 (quoting *Johnson v. State,* 189 S.W.3d 640, 644 (Mo.App.2006)).

## Analysis

In order to prevail on an ineffective assistance of counsel claim, Dawson must show by a preponderance of the evidence that: (1) trial counsel's performance was deficient because she failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the deficient performance prejudiced Dawson. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Simmons,* 955 S.W.2d 729, 746 (Mo. banc 1997). If either the performance prong or the prejudice prong is not met, then we need not consider the other, and Dawson's claim of ineffective assistance of counsel must fail. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

█ To satisfy the performance prong, Dawson must "identify trial counsel's specific acts or omissions that were not in conformance with the range of competent representation, or that were the result of unreasonable professional judgment." *Williams,* 205 S.W.3d at 305. To satisfy the performance prong, Dawson must overcome the presumption that any challenged action was sound trial strategy and that trial counsel rendered adequate assistance of counsel and made all significant decisions in the exercise of professional judgment. *Strickland,* 466 U.S. at 689–90, 104 S.Ct. 2052. Trial strategy is judged by the " 'reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Williams,* 205

S.W.3d at 305 (quoting *Johnson,* 189 S.W.3d at 645).

█ In order to overcome the prejudice prong, Dawson must show a reasonable probability that, but for trial counsel's alleged deficiencies, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. " '[S]imply showing that the alleged error had a conceivable effect on the trial outcome is not sufficient; instead, the appellant must show that, absent the error, there is a reasonable probability that he would have been found not guilty.' " *Williams,* 205 S.W.3d at 305 (quoting *Johnson,* 189 S.W.3d at 645).

## Point One

█ In Dawson's first point on appeal, he contends that he received ineffective assistance of counsel because trial counsel failed to "particularize" the prejudice that would result if the trial court did not sever Dawson's trial from that of co-defendant Steward.

### *Performance*

Pursuant to Rule 24.06 and section 545.880, a separate trial is required when the defendant files a written motion requesting a separate trial and the trial court: (1) finds a probability of prejudice exists if the defendants are tried jointly, or (2) the defendant is subject to assessment of punishment by the jury and there is a probability of prejudice, or (3) there is material evidence not admissible against the defendant but would be admissible against the co-defendant if there is a separate trial, or (4) there is a statement that is not admissible against the defendant but is admissible against the co-defendant, or (5) a separate trial is required to make a fair determination of whether the defendant is guilty.

The motion court concluded in its Findings of Facts, Conclusions of Law and Judgment that:

> There was no material evidence admitted against Mr. Dawson that would not have been admitted had there been a separate trial nor were there any statements admitted in the case that would not have been admitted against Dawson had a separate trial been ordered. Mr. Dawson's co-defendant, Javonty Steward's alibi defense, did not adversely affect movant's assertion that his involvement in the crime was minimal. *Mr. Dawson has failed to allege facts or provide evidence to show that he was entitled to severance of his case and was thereby prejudiced.*

Dawson claims that there were facts available to trial counsel which were not presented to the trial court but which would have supported severance. However, the "additional" facts articulated in Dawson's brief amount to nothing more than expanded argument on the point trial counsel raised in the motion to sever—that Steward's intent to assert an alibi defense would prejudice Dawson. In ruling on the motion to sever, the trial court concluded that allegations of antagonistic defenses were not sufficient to overcome grounds supporting joinder. Dawson has offered us no explanation for how additional "particularizing" of the argument that Steward's alibi defense would be antagonistic to Dawson's defense would have overcome this conclusion.[4] Dawson has not met his burden to demonstrate that trial counsel's performance was deficient.

### Prejudice

We also find that Dawson failed to sustain his burden to demonstrate prejudice. Dawson alleges that "[b]ut for counsel's failure to formulate a defense and articulate reasons why the cases had to be severed, the outcome of the proceedings *might* have been different." (Emphasis added.) This hypothetical assertion is insufficient to allege prejudice pursuant to *Strickland.* As previously noted, Dawson must assert and establish a *reasonable probability* that, but for trial counsel's alleged deficiencies, the result of the proceeding *would* have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Even if Dawson could be viewed as having correctly alleged the standard required to demonstrate prejudice, he would be unable to sustain his burden. Dawson cannot demonstrate that the motion to sever would have been granted but for his trial counsel's allegedly deficient performance. Stated differently, Dawson cannot demonstrate, and has not argued, that it would have been an abuse of discretion for the trial court to deny Dawson's motion to sever had trial counsel presented additional particularized support for the motion.[5] *State v. Davis,* 825 S.W.2d 948, 953 (Mo. App. E.D.1992) (no prejudice unless defendant can show it would have been an abuse of discretion for trial court to deny motion to sever). The motion court expressly

---

4. To the extent Dawson's argument on appeal can be construed as an indictment of the trial court's ruling on the motion to sever, we will not afford review to such a claim. *Griffin v. State,* 794 S.W.2d 659, 661 (Mo. banc 1990) (claims of trial error are for review on direct appeal and are not properly raised in Rule 29.15 motions, which are limited to claims of ineffective assistance of counsel).

5. The argument portion of Dawson's brief asserts that trial counsel was ineffective for not participating in pre-trial discovery, as this prevented trial counsel from concreting a defense for Dawson. This issue will not be reviewed on appeal, as it is an issue wholly separate and independent from the issue of particularizing arguments in support of the motion to sever preserved in Dawson's Point Relied On. Rule 84.04(e).

found that even if trial counsel had made the additional arguments Dawson claims should have been advanced, the motion to sever would have been denied. Specifically, the motion court found that "[t]he fact that Steward presented an alibi defense did not diminish or refute the claim by movant he was minimally involved in the criminal acts. These defenses by Dawson were still viable regardless of the claim by Steward that he was not present at the scene of the crime." We cannot conclude that the motion court's findings in this regard were clearly erroneous.

█ In addition, though Dawson argues that Steward's alibi prejudiced him because the "State argued Steward's failed alibi implicated both men," this argument ignores that other evidence in the case placed Dawson at the scene of the crimes. Based on the overwhelming evidence of Dawson's guilt, it is not reasonable to conclude that but for counsel's deficient performance in failing to particularize a basis for severance, Dawson would have been found not guilty. "Where ... there is overwhelming evidence of guilt, such that it cannot be reasonably said that, but for the challenged actions of trial counsel, the jury would have found the movant not guilty ... the movant suffers no prejudice...." *Anderson v. State*, 66 S.W.3d 770, 778 (Mo.App. W.D.2002).

Point One is denied.

## Point Two

In Dawson's second point on appeal, he argues that he received ineffective assistance of counsel because trial counsel failed to object to Rogers's assertion of his right to remain silent when called to testify. Dawson maintains that Rogers's assertion of his right to remain silent led the jury to conclude that Dawson was also guilty because he did not testify. Dawson maintains that if trial counsel had properly objected the outcome of the trial would have been different.

### *Performance*

█ Dawson claims that pursuant to *State v. Wright*, 582 S.W.2d 275 (Mo. banc 1979), a witness is not allowed to take the stand to take the Fifth Amendment, if allowing the witness to do so "let[s] the jury know the witness considers her conduct to have been criminal in nature so that the jury could infer the defendant is guilty." *Id.* at 283. It is true that the State was not permitted to call Rogers to the stand merely to emphasize his refusal to testify. *State v. Schaller*, 937 S.W.2d 285, 289 (Mo.App. W.D.1996). However, Rogers's was permitted to take the stand to assert his Fifth Amendment privilege if in so doing Rogers's testimony served some other legitimate purpose. *Id.*

Before permitting Rogers to take the stand, the trial court, the State, and counsel for Steward and Dawson discussed the matter, at length, outside of the presence of the jury. Dawson's counsel argued against Rogers's being permitted to take the stand to plead the Fifth Amendment, arguing such testimony would create the impression Rogers had been threatened not to testify. The trial court considered the arguments of counsel and determined that it would permit the State to call Rogers to invoke his Fifth Amendment privileges in front of the jury for the limited purpose of explaining why the State would not be presenting evidence it had specifically discussed in its opening statement. However, the trial court ruled it would not permit the State to "set up" Rogers's assertion of the right to remain silent by asking Rogers about his relationship with Dawson or Steward, his participation in the crimes, or any other questions which could lead the jury to infer that Rogers's refusal to testify evidenced a consciousness of guilt that implicated Dawson and Stew-

ard. Thus, the State only asked Rogers whether he was a co-defendant, whereupon Rogers asserted his right to remain silent.

■ Dawson contends that trial counsel should have objected in the presence of the jury when Rogers actually took the stand. Dawson's argument ignores that trial counsel's objection to Rogers's testimony during the side-bar with the trial court had already successfully narrowed the State's right to inquire of Rogers about nothing more than a fact already obvious to the jury from other testimony— that Rogers was a co-defendant. We cannot conclude that trial counsel's failure to object again once Rogers actually took the stand constituted ineffective assistance of counsel. " 'In arguing ineffectiveness, [Dawson] must overcome a strong presumption that counsel's performance was sound trial strategy.' " *Goudeau v. State,* 152 S.W.3d 411, 418 (Mo.App. S.D.2005) (quoting *State v. Clay,* 975 S.W.2d 121, 135 (Mo. banc 1998)). When judging whether counsel's failure to object rises to the level of ineffective assistance of counsel it is necessary to consider that " '[i]n many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.' " *Id.* (quoting *Clay,* 975 S.W.2d at 135).

Here, Dawson cannot overcome the presumption that trial counsel's failure to object was anything other than reasonable trial strategy. Although trial counsel could not recall during her post-conviction hearing testimony whether a specific trial strategy influenced her decision not to object when Rogers actually took the stand, this lack of recollection alone does not overcome the presumption that her decision not to object was a reasonable trial strategy. An objection may have served

to highlight a perceived connection between Rogers's refusal to testify and Dawson's guilt. Dawson has failed to demonstrate that trial counsel's performance was deficient.

### *Prejudice*

■ Dawson has also failed to demonstrate prejudice. Dawson has not alleged that an additional objection to Rogers's testimony once he actually took the stand would have been sustained. Given the lengthy discussion about whether to permit Rogers to testify, and the constraint the trial court imposed on the State's questioning of Rogers as a condition of permitting him to testify, it is highly unlikely that a re-asserted general objection to Rogers's testimony would have been sustained. Trial counsel is not ineffective for failing to make a meaningless objection. *Mitchem v. State,* 250 S.W.3d 749, 755–56 (Mo.App. W.D.2008).

Point Two is denied.

### Conclusion

The judgment of the trial court is affirmed.

All concur.