Skylor W. **RADMER**, Respondent,

v.

**STATE of Missouri, Appellant.**

No. WD 74014.

Missouri Court of Appeals,
Western District.

March 27, 2012.

Pamela Kay Blevins, St. Joseph, MO, for appellant.

Ruth Sanders, Kansas City, MO, for respondent.

Before Division One: CYNTHIA L. MARTIN, Presiding Judge, THOMAS H. NEWTON, Judge, and KAREN KING MITCHELL, Judge.

CYNTHIA L. MARTIN, Judge.

The State appeals from the motion court's grant of Skylor Radmer's ("Radmer") Rule 29.15 motion based on the ineffective assistance of counsel he received during the sentencing phase of his bifurcated trial. The State claims that defense counsel's failure to call a psychologist to testify about Radmer's mental disability in the sentencing phase did not rise to the level of ineffective assistance of counsel. We affirm.

### Factual and Procedural History[1]

Radmer was first charged with statutory rape and statutory sodomy in 2003. Bert Godding ("Godding") represented Radmer in that case. During the 2003 prosecution, Godding hired Dr. Bill Geis ("Dr. Geis"), a licensed clinical psychologist, to evaluate whether Radmer had the intellectual capacity to knowingly waive his *Miranda* rights before giving a statement to law enforcement. After an examination of Radmer, Dr. Geis concluded that Radmer had an adjustment disorder with depressed mood and borderline intellectual functioning. Godding relied on Dr. Geis's conclusions as the basis for a motion to suppress Radmer's statement, but the trial court denied the motion to suppress. Ulti-

mately, though, the 2003 charges were dismissed by the State because the alleged victim refused to testify at trial.

Four years later, Radmer was charged with four counts of first-degree statutory sodomy, and again, Godding represented Radmer. Because the four counts involved two victims, the trial court severed counts III and IV,[2] and in 2008, the remaining counts proceeded to a bifurcated jury trial pursuant to section 557.036.[3] The jury found Radmer guilty of the remaining charges, both of which were first-degree statutory sodomy, and the sentencing phase followed.

During the sentencing phase, the State presented two types of evidence: (1) the items found in Radmer's bedroom, including little girls' underwear and "dolls" that "were cut in their genital areas" and had "dog hair ... glued to the genital areas," and testimony regarding the tendency of sex offenders to use those items in "working up to the offense"; and (2) testimony of other individuals who claimed that Radmer committed other, uncharged acts of sexual abuse. In contrast, Radmer presented testimony of three witnesses—two family members and his employer. The family members testified that they had never observed Radmer behave inappropriately with children. And Radmer's employer testified that he was a good employee. No evidence was presented regarding Radmer's impaired intellectual functioning.

After evidence presented by the State and by Radmer, the jury recommended an imprisonment term of ninety years for

---

1. On an appeal from the motion court's ruling on a Rule 29.15 motion, we view the facts in the light most favorable to the verdict. *Hutton v. State*, 345 S.W.3d 373, 374 n. 1 (Mo.App. W.D.2011).

2. The State dismissed counts III and IV following trial on counts I and II.

3. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

each count. Before the trial court imposed a sentence, Godding argued that the sentencing assessment report may not be accurate because Radmer has a low IQ and may not have understood the questions asked of him during the pre-sentencing investigation. Godding asked the judge to "remember that, that [Radmer] does have those mental deficits." However, *no evidence* supporting Godding's assertion had been presented to the jury as it considered its recommended sentence. The trial court accepted the jury's recommendation and sentenced Radmer to ninety years imprisonment on both counts. The conviction was affirmed in *State v. S.W.R.*, 302 S.W.3d 811 (Mo.App. W.D.2010).

Radmer filed a timely pro se Rule 29.15 motion. Counsel was appointed, and an amended motion was filed timely. The amended motion argued that Godding provided Radmer with ineffective assistance of counsel by failing "to hire an expert such as Dr. Bill Geis to present evidence regarding the effects of [Radmer's] mental disability in mitigation at [Radmer's] sentencing hearing." The motion court granted an evidentiary hearing. The hearing was held in front of Judge Patrick Robb ("Judge Robb"), the same judge who presided over Radmer's trial.

Dr. Geis testified at the evidentiary hearing regarding the evaluation he completed of Radmer for the 2003 case, and a written copy of the findings of the evaluation was admitted into evidence. The written copy of Dr. Geis's findings indicated that, as determined by the evaluation, Radmer had a "Full Scale IQ of 75," a score that places Radmer in the "[b]orderline range of intellectual functioning" and within the bottom five percent of all persons. Dr. Geis testified that Radmer's IQ score signified that his functioning age was ten years old. In addition, the findings revealed that Radmer's "thinking is con-

crete and simplistic, and he has significant difficulty grasping complex or abstract ideas."

With respect to the problems that people with borderline intellectual functioning have with sexual boundaries, Dr. Geis testified as follows: "They're catching up in those kind of areas, this discovery, just basic sexual knowledge is oftentimes lacking just as any kind of knowledge would be whether it's about government or about current affairs. And these individuals have less controls [sic] in that kind of way." Dr. Geis testified that a person with borderline intellectual functioning who behaves sexually inappropriately is different than a pedophile. According to Dr. Geis, a pedophile has "a very fixated and specific template that they're looking for," such as prepubescent boys or girls. In contrast, an individual who has borderline intellectual functioning and behaves sexually inappropriately is a "regressed kind of sex offender." Regressed sex offenders "typically [have] more psychosocial difficulties," and "their kind of sexual affiliation seems to be more general and certainly due to access as in, for example, this case where somebody is in the very living situation they're in." Dr. Geis concluded that Radmer was not a pedophile and that he believed Radmer was amenable to treatment.

Godding also testified at the evidentiary hearing. Godding admitted that he neither consulted with an expert nor considered putting on evidence regarding Radmer's impaired intellectual functioning or other psychological factors during the sentencing phase. Godding acknowledged that if he had an expert witness to provide evidence that would mitigate Radmer's culpability, he would have presented that evidence to the jury during the sentencing phase. In response to the question of whether he had a strategic reason for fail-

ing to call Dr. Geis or a similar expert to testify as to Radmer's impaired intellectual functioning in the sentencing phase, Godding stated, "I don't believe that I necessarily had a reason not to or to do that. . . . I don't know why I didn't call someone like that."

Following the conclusion of the evidentiary hearing, the motion court granted Radmer's motion, finding that Godding's failure to call an expert witness to testify about Radmer's impaired intellectual functioning constituted ineffective assistance of counsel and that prejudice resulted from the ineffective assistance of counsel.

The State appeals.

### Standard of Review

"Appellate review of the [motion] court's action on the motion filed under this Rule 29.15 shall be limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). Findings of facts and conclusions of law are " 'clearly erroneous only if, after review of the entire record, we are left with a definite and firm impression that a mistake has been made.' " *Williams v. State*, 205 S.W.3d 300, 305 (Mo.App. W.D.2006) (quoting *Johnson v. State*, 189 S.W.3d 640, 644 (Mo.App. W.D. 2006)).

### Analysis

■ "In order to prevail on an ineffective assistance of counsel claim, [Radmer] must show by a preponderance of the evidence that: (1) trial counsel's performance was deficient because [he] failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the deficient performance prejudiced [Radmer]." *Dawson v. State*, 315 S.W.3d 726, 731 (Mo.App. W.D.2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984); *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997)). If Radmer has not established either the performance prong or the prejudice prong, then we need not consider the other, and his claim of ineffective assistance of counsel must fail. *Id.*

"To satisfy the performance prong, [Radmer] must 'identify trial counsel's specific acts or omissions that were not in conformance with the range of competent representation, or that were the result of unreasonable professional judgment.' " *Id.* (quoting *Williams*, 205 S.W.3d at 305). Radmer must overcome the presumption that any challenged action was sound trial strategy, that trial counsel rendered adequate assistance of counsel, and that trial counsel made all significant decisions in the exercise of professional judgment. *Id.* "Trial strategy is judged by the 'reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Id.* (quoting *Williams*, 205 S.W.3d at 305).

"[T]o overcome the prejudice prong, [Radmer] must show a reasonable probability that, but for trial counsel's alleged deficiencies, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). " 'Simply showing that the alleged error had a conceivable effect on the trial outcome is not sufficient; instead, the appellant must show that, absent the error, there is a reasonable probability that he would have been found not guilty.' " *Id.* (quoting *Williams*, 205 S.W.3d at 305).

The State claims that the motion court clearly erred in finding that Godding's failure to call Dr. Geis or similar expert to testify as to Radmer's impaired intellectual functioning during the sentencing phase of the trial constituted ineffective assistance

of counsel.[4] More specifically, the State claims that Godding, as a seasoned defense attorney, made a well-informed, strategic decision not to call Dr. Geis or a similar expert.

■ To successfully prove that trial counsel was ineffective for failing to call a witness, a defendant must prove four elements: (1) "trial counsel knew or should have known of the existence of the witness"; (2) "the witness could be located through reasonable investigation"; (3) "the witness would testify"; and (4) "the witness's testimony would have produced a viable defense." *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004). Further, "[c]ounsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise.'" *Id.*

All four elements were proven in this case. Godding admitted at the Rule 29.15 evidentiary hearing that he knew of the existence of Dr. Geis because Dr. Geis examined Radmer in connection with Godding's representation of Radmer in the 2003 prosecution. Dr. Geis's testimony revealed that he was available for the 2008 prosecution and would have been willing to testify during the sentencing phase. And the final element—the witness's testimony producing a viable defense—was proven because "the submission of mental health history, *subject to counsel's strategic judgment,* is a viable defense during a bifurcated sentencing phase." *Vaca v. State*, 314 S.W.3d 331, 336 (Mo. banc 2010) (emphasis added).

■ While trial counsel's decision not to call a witness is presumptively a matter of trial strategy, the trial court's conclusion that Radmer proved otherwise during the evidentiary hearing is not clearly erroneous. The transcript of the trial, of which the motion court took judicial notice, indicated that Godding was aware of Radmer's impaired intellectual functioning because Godding asked the trial court to take note of Radmer's "mental deficits" when relying on the sentencing assessment report, and in anticipation of sentencing. Though Godding's request of the trial court evidenced his appreciation of the relevance of such information at the sentencing stage, Godding failed to present any evidence of Radmer's impaired intellectual functioning to the jury as it considered the recommended sentence to be imposed. Further, when asked about his decision not to call Dr. Geis or a similar expert to testify as to Radmer's impaired intellectual functioning at sentencing, Godding testified at the evidentiary hearing as follows:

Q: Okay. And did you consult with an expert about putting on evidence about Mr. Radmer's mental disability or any other psychological factors? Did you consider putting on that evidence at sentencing?

A: In the 2007 case I did not.

· · · ·

Q: If you had had an expert witness to testify that Mr. Radmer would likely have benefitted from treatment earlier in his life but he wasn't able to get that treatment, would you have wanted to present that evidence to the jury at sentencing?

---

4. Because the trial was bifurcated pursuant to section 557.036 and because Radmer's Rule 29.15 motion solely complained about Godding's representation during the sentencing phase, it follows that an evaluation of Godding's performance is limited to the sentenc- ing phase of the trial. The motion court correctly limited its analysis to the sentencing phase, and we will do the same in our review of the motion court's findings of fact and conclusions of law.

A:   Sure. I think that would be reasonable.

Q:   And if you had had an expert witness to testify that Mr. Radmer is not a permanently dangerous sociopath pedophile, would you have wanted to present that evidence to the jury as well?

A:   Yes.

Q:   Okay. And just to be clear, you've been in the courtroom while Dr. Geis testified now?

A:   Yes.

Q:   And you heard his testimony?

A:   Yes.

Q:   Did you have a strategic reason for failing to put on evidence such as the evidence that Dr. Geis testified to at sentencing?

A:   I don't believe that I necessarily had a reason not to or to do that. Mr. Radmer had—at the time of sentencing was—you know, was older than the first time he had been there. He has been— held a job. He was in his early 20's. I don't—I don't know why I didn't call someone like that. But I don't know that it might be—at that time that it was necessarily pertinent, I think, at that point. I certainly didn't have the information that Dr. Geis was talking about.

On this evidence, the motion court concluded that Godding's testimony "rebutted the presumption that counsel's failure to call Dr. Geis was a matter of trial strategy." We cannot conclude that the motion court's finding is clearly erroneous. It is true that a lack of recollection by trial counsel of the reason for making a strategic decision at trial does not, alone, "overcome the presumption that [counsel's] decision ... was a reasonable trial strategy." *Dawson v. State,* 315 S.W.3d 726, 734 (Mo. App.W.D.2010) Here, however, Godding testified that he didn't believe he had a strategy one way or the other, and that he didn't know why he didn't call an expert.

The trial court could reasonably have interpreted Godding's testimony as an admission that he had no trial strategy, as opposed to testimony that he had a trial strategy he could no longer recall. *See Vaca,* 314 S.W.3d at 337 ("Here however, experienced defense counsel candidly admitted that, without consideration and for no strategic reason, he failed to call a mental health expert. His failure to consider was ineffective.").

Moreover, even if the trial court accepted Godding's musings on the stand as present day rationalizations for his failure to consider calling an expert to testify during the sentencing phase, the trial court was free to conclude on this record that a strategy based on those musings was not reasonable. *Cf. White v. State,* 290 S.W.3d 162, 165 (Mo.App. E.D.2009) (noting that if trial counsel cannot articulate a reasonable strategy for failing to strike an admittedly biased venireperson, trial counsel has failed to exercise the customary skill and diligence of a reasonably competent attorney). This is particularly so given Godding's awareness of Radmer's mental impairment, and in light of Godding's request that Radmer's impaired intellectual functioning be considered by the trial court in sentencing—a request made *after* the jury had rendered its verdict regarding recommended sentencing.

Radmer successfully established that Godding's failure to call Dr. Geis or a similar expert during the sentencing phase fell below an objective standard of reasonableness. The motion court's findings of fact and conclusions of law regarding the performance prong are not clearly erroneous.

■   Because the motion court's findings and conclusions with respect to the performance prong are not clearly erroneous, we must consider whether Radmer estab-

lished the prejudice prong. The State argues that there was no reasonable probability that, as a result of Godding's failure to call Dr. Geis or a similar expert during the sentencing phase, Radmer was prejudiced. More specifically, the State claims that, because Dr. Geis had worked for the public defender in previous cases, the jury would have found his testimony biased. In addition, the State contends that Dr. Geis's testimony would be harmful to Radmer rather than helpful because Dr. Geis testified at the evidentiary hearing that Radmer demonstrated "a consistent pattern of sexual deviance" and Dr. Geis speculated that Radmer had "six to eight, something like that" victims of his sexual abuse.

The motion court made the following conclusion regarding the prejudice prong: "In light of the testimony of Dr. Geis presented at the evidentiary hearing, there is a reasonable probability—although not a certainty—that presenting Dr. Geis's testimony would have led to a different outcome in the punishment stage of the trial." We cannot conclude that this finding is clearly erroneous. The motion court observed that "[t]he reason for having a separate penalty phase in non-capital trials is to permit a broader range of evidence relevant to the appropriate punishment to be imposed by the jury." *State v. Prosser*, 186 S.W.3d 330, 333 (Mo.App. E.D.2005) (citing *State v. Ervin*, 979 S.W.2d 149, 158 (Mo. banc 1998)). The motion court also observed that "a defendant's significant mental illness and intellectual deficits has been recognized as establishing a reasonable probability of a different sentencing outcome." *See Glass v. State*, 227 S.W.3d 463, 471 (Mo. banc 2007) (recognizing that evidence of a defendant's impaired intellectual functioning can be prejudicial as such evidence can be inherently mitigating.).

The State's arguments with respect to the motion court's finding of prejudice can be simplified into one: the motion court's conclusion that prejudice existed was error because the motion court failed to ascertain the possible effect of Dr. Geis's testimony. What the State fails to take into consideration is that Judge Robb—as both the presiding judge at trial and at the Rule 29.15 motion hearing—was in a unique position to ascertain the effect of failing to call Dr. Geis or a similar expert to testify as to Radmer's impaired intellectual functioning during the sentencing phase. *See State v. Wells*, 804 S.W.2d 746, 749 (Mo. banc 1991) ("It is ... important that the same judge presided at the trial and at the 29.15 hearing, and was thus better equipped to assess the strengths and possible weaknesses of the prosecution's case....").

Because Judge Robb presided over the sentencing phase of Radmer's trial, he knew that the State presented testimony from other individuals who claimed that Radmer committed other, uncharged acts of sexual abuse. Thus, the State's claim that Dr. Geis's testimony that Radmer demonstrated "a consistent pattern of sexual deviance" and that Dr. Geis's speculation that Radmer victimized "six to eight" individuals would harm, rather than aid, Radmer's claim is false. The jury already knew about Radmer's additional victims and pattern of sexual abuse.

In addition, the State's claim that the jury would find Dr. Geis biased also fails. Dr. Geis testified at the evidentiary hearing that, while he had been hired by the public defender's office as an expert witness in the past, he had also been hired by prosecutors and by private attorneys for civil suits. Judge Robb heard Dr. Geis's testimony at the evidentiary hearing and was in the best position to evaluate Dr. Geis's possible bias.

The motion court's conclusion that there was a reasonable probability that present-

ing Dr. Geis's testimony would have led to a different outcome is not clearly erroneous.

### Conclusion

The motion court found that Radmer's trial counsel was ineffective and that Radmer was thereby prejudiced. We defer to those findings, and cannot conclude them to be clearly erroneous on this record. The motion court's judgment granting Radmer a new sentencing phase of his trial is affirmed.

All concur.